Scott E. Schutzman, Esq.  SBN 140962
LAW OFFICES OF SCOTT E. SCHUTZMAN
3700 South Susan Street, Suite 120
Santa Ana, California 92704
Tel:  714-543-3638
Fax:  714-245-2449

Attorneys for Defendants,
Edward Malkin, Microflo Ltd., and Ecotech Limited

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY SYNERGISTICS, INC. | Case No. SACV 10-1821-JST(JEMx) |
| Plaintiff, | **DEFENDANT'S NOTICE OF SPECIAL MOTION TO STRIKE COMPLAINT FOR MALICIOUS PROSECUTION PER CAL. CCP 425.16; REQUEST FOR SANCTIONS IN AMOUNT TO BE DETERMINED** |
| -v- | |
| MICROFLO, LTD., EDWARD MALKIN, ECOTECH LIMITED, a Cayman Islands Company, and DOES 1 through 20, inclusive | |
| Defendants. | Date:   February 14, 2011<br>Time:   10:00 a.m. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

Please take notice that Defendants Edward Malkin and Ecotech, Inc. hereby move this Court to strike the Complaint herein pursuant to Cal. C.C.P. 425.16, and also move this Court for an award of monetary sanctions in an amount equal to $37,926.00 against Liberty Synergistics, Inc. before U.S.D.J. Josephine Staton Tucker at 10:00 a.m. on February 14, 2011 or as soon thereafter as the parties may be heard in Courtroom 10-A, at 411 West Fourth St., Santa Anna, California 92701.

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

1

2       The basis of the request for relief is that the Plaintiffs lack probable cause for their

3   malicious prosecution cause of action, there is no jurisdiction over the defendants and the

4   action is improperly venued.

5       This Motion is based upon the pleadings and files herein, the Declaration of

6   Edward Malkin, the Declaration of Dennis H. Sabourin, and the Memorandum of Points

7   and Authorities submitted herewith, and such other facts of which the Court may take

8   judicial notice pursuant to Federal Rule of Evidence Rule 201.

9       Simultaneous with the filing of this motion, the defendants are also filing a

10  motion pursuant to F.R.C.P. 12(b) challenging jurisdiction over the defendants in this

11  Court. By the filing of this motion the defendants do not intend to waive, and explicitly

12  do not waive, their claim that this Court does not have jurisdiction over the defendants.

13  The filing of this motion is not intended as an acceptance of the general jurisdiction of the

14  Court over the defendants; in fact, the lack of jurisdiction of this Court over the

15  defendants is asserted as another basis for sanctions under this motion.

16

17      This Motion is made following the conference of counsel which took place on

18  January 3, 2011, pursuant to Local Rule 7-3.

19                              LAW OFFICES OF SCOTT E. SCHUTZMAN

20

21                              By: /s/ Scott Schutzman, Esq.
                                    Scott E. Schutzman, Esq. (SBN 140962)
22                                  Attorney for Defendants

23  Dated: January 3, 2011

24

25

26

27

28

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

1

2          UNITED STATES DISTRICT COURT
           CENTRAL DISTRICT OF CALIFORNIA
3

4   LIBERTY SYNERGISTICS, INC.          )     Case No. SACV 10-1821-JST(JEMx)
                                        )
5            Plaintiff,                 )
                                        )
6            -v-                        )
                                        )
7   MICROFLO, LTD., EDWARD              )
8   MALKIN, ECOTECH LIMITED, a          )
    Cayman Islands Company, and DOES 1  )
9   through 20, inclusive               )
                                        )
10           Defendants.                )

11

12

13     MICROFLO DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
14   MOTION TO STRIKE COMPLAINT FOR MALICIOUS PROSECUTION PER
       CAL. CCP 425.16; REQUEST FOR SANCTIONS IN AMOUNT TO BE
15                        DETERMINED

16

17

18

19

20   Scott E. Schutzman, Esq.  SBN 140962
21   LAW OFFICES OF SCOTT E. SCHUTZMAN
     3700 South Susan Street, Suite 120
22   Santa Ana, California 92704
     Tel:  714-543-3638
23   Fax:  714-245-2449

24   Attorneys for Defendants,
     Edward Malkin, Microflo Ltd., and Ecotech Limited
25

26

27
28

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

1

2

# TABLE OF CONTENTS

3

PAGE

4

TABLE OF AUTHORITIES................................................................. -iii-

5

PRELIMINARY STATEMENT.........................................................…...  1

6

STATEMENT OF FACTS AND PROCEDURAL HISTORY...........................  2

7

8

1.      Factual Basis of Microflo's Earlier Causes of Action Against
        Liberty Synergistics, Inc.........................................................  2

9

2.      The Progress of Microflo's Litigation Against Liberty and Others...........  8

10

3.      Settlement of the Litigation by Microflo's Dismissal of its Complaint......  13

11

12

4.      The Egregious Conduct of Liberty in Pursuing this Malicious
        Prosecution Litigation.............................................................  16

13

14

LEGAL ARGUMENT

15

POINT ONE

16

THE COMPLAINT SHOULD BE DISMISSED PURSUANT
TO CAL. C.C.P. §425.16

17

18

1.      The Complaint Alleges a Cause of Action Arising From Defendants'
        Rights Of Petition In Connection With A Public Issue........................  17

19

20

2.      There is Virtually No Likelihood That Plaintiff Will Prevail On
        Its Claim...........................................................................  18

21

        A.      This Court Would Apply New York Law...............................  18

22

        B.      Elements of Cause of Action for Malicious Prosecution..............  19

23

24

        C.      The Underlying Litigation Did Not Result in a Favorable
                Termination for Liberty.................................................  20

25

26

-i-

27

28

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

1

2                          **TABLE OF CONTENTS (Cont'd)**

3                                                                                    **PAGE**

4           D.     The Underlying Litigation Did Not Cause Liberty to
5                  Suffer any Special Injury............................................   22

6           E.     Liberty Cannot Show That Microflo Lacked Probable Cause
                   To bring and Maintain the Underlying Litigation.....................   23
7

8       CONCLUSION.................................................................   25

D. The Underlying Litigation Did Not Cause Liberty to Suffer any Special Injury — 22

E. Liberty Cannot Show That Microflo Lacked Probable Cause To bring and Maintain the Underlying Litigation — 23

CONCLUSION — 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                      -ii-

27

28

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

1

2                        **TABLE OF AUTHORITIES**

3                                                        **PAGE**

4

5    CA, Inc. v. Simple.com, Inc.,
         621 F.Supp.2d 45 (E.D. N.Y. 2009)......................................   19

6
     Casa Herrera, Inc. v. Beydoun,
7        32 Cal. 4th 336 (2004).....................................................   20

8    Daniels v. Robbins,
         182 Cal. App. 4th 204 (Cal. App. 4th Dist. 2010)......................   17
9
     Engel v. CBS, Inc.,
10       93 N.Y.2d 195, 711 N.E.2d 626 (N.Y. 1999)...........................   2,23

11
     Engel v. CBS Inc.,
12       981 F.2d 1076 (9th Cir. 1993)..............................................   1,17,19

13   Fabbrini v. City of Dunsmuir,
         544 F.Supp.2d 1044 (E.D. Cal. 2008)...................................   23
14
     Furgang & Adwar, LLP v. Fiber-Shield Industries, Inc.,
15       866 NYS 2d 250 (2d Dept. 2008).......................................   20

16   Jarrow Formula, Inc. v. LaMarche,
         31 Cal.4th 728 (2003)...................................................   17,23
17
     Molinoff v. Sassower,
18       471 N.Y.S.2d 312 (N.Y. App. Div. 1984)..............................   23

19
     Paulus v. Bob Lynch Ford, Inc.,
20       139 Cal. App. 4th 659 fn 11, 43 Cal. Rptr.
         3d 148 (Ct. of Appeal 6th Dist. 2006)...................................   24
21
     Siebel v. Mittelsteadt,
22       41 Cal. 4th 735 (2007).....................................................   20

23

24

25                                -iii-

26

27

28

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

1

2          **TABLE OF AUTHORITIES (Cont'd)**

3                                                              **PAGE**

4

5     Sipsas v. Vaz,
         50 A.D.3d 878, 855 N.Y.S.2d 248
6        (N.Y. App. Div. 2008)……………………………………………..  2,20

7     Wilhelmina Models, Inc. v. Fleisher,
         19 A.D.3d 267, 797 N.Y.S.2d 83
8        (N.Y. App. Div. 2005)……………………………………………  24

9     Wilson v. Parker, Covert & Chidester,
         28 Cal.4ᵗʰ 811 (Cal. 2002)……………………………………..  23

10

11

12

13     **STATUTES AND OTHER AUTHORITIES**

14     CAL. CCP §425.16…………………………………………………… 1,17,18,25

15     F.R.C.P. 12(b)(6)…………………………………………………  9

16     F.R.C.P. 41(a)(1)(ii)…………………………………………………  14

17

18

19

20

21

22

23

24

25

26                                    -iv-

27

28

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

1

2

## PRELIMINARY STATEMENT

3   The reality is that the grounds for this motion and legal argument in support of this motion are clear and compelling and can be stated briefly.

5   This action is an action for malicious prosecution brought to harass and punish the defendants for Microflo's assertion of its rights in the previous litigation in the United States District Court for the Eastern District of New York (the "Underlying Litigation"), between Microflo, Ltd., a New York corporation as plaintiff ("Microflo") and Liberty Synergistics, Inc., a California corporation ("Liberty"), Dan Foy ("Foy"), Julie Swink ("Swink"), Ronald N. Green ("R. Green"), and Gary Green ("G. Green"), collectively referred to hereafter as the "Liberty Defendants," and Walgreen Co. ("Walgreen") and Michael Tumis ("Tumis"), collectively referred to hereafter as the "Walgreen Defendants." It is well established that malicious prosecution actions of this sort are within the scope of actions which may be challenged by motions to strike brought under CAL. CCP §425.16 and that the motion should be granted and sanctions imposed unless Liberty can establish probable cause in support of its complaint in this action.

18   The first ground for granting defendants motion is that there is not even probable cause for asserting jurisdiction and venue over the defendants in California. The jurisdiction and venue issues are addressed in the separate motion filed by the defendants and the facts and legal arguments made in that separate motion are incorporated here by reference.

22   Second, as Liberty was well aware prior to filing its complaint for alleged malicious prosecution, this litigation is governed not by California law but by New York law. See Engel v. CBS Inc., 981 F.2d 1076, 1080-1082 (9th Cir. 1993) and Sabourin Declaration Ex. E. Unlike California, New York law applies the "English Rule" to malicious prosecution causes of action requiring a showing of the current day equivalent of special injury, "that the defendant must

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

28                              1

abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit." Engle v. CBS, Inc., 93 N.Y.2d 195, 205, 711 N.E.2d 626 (N.Y. 1999) and Sabourin Declaration Ex. E.

The third, and easiest argument establishing that Liberty cannot establish probable cause is that the Underlying Litigation did not result in a favorable termination as to Liberty. Liberty did not win the underlying litigation on a motion to dismiss, a summary judgment motion, or a trial on the merits. Microflo and the Liberty Defendants settled the Underlying Litigation. See Sipsas v. Vaz, 50 A.D.3d 878, 878-879, 855 N.Y.S.2d 248 (N.Y. App. Div. 2008).

Fourth, Liberty cannot establish probable cause that Microflo (or Malkin or Ecotech) brought or pursued the litigation for malicious purposes without probable cause. In fact, Liberty cannot establish probable cause for the proposition that Microflo is the alter ego of Malkin or Ecotech and, therefore, cannot establish probable cause for the proposition that Malkin or Ecotech brought or pursued the litigation at all.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### Factual Basis of Microflo's Earlier Causes of Action Against Liberty Synergistics, Inc.

As the following chronology and facts will show, plaintiff Liberty Synergistics, Inc. ("Liberty") engaged in a series of acts and representations, many documented in writing, that led defendant Microflo Ltd. Inc. ("Microflo") to conclude that Liberty had not acted in good faith and fairly, engaged in unfair trade practices, fraudulently secured samples of Microflo's product, fraudulently secured information about how Microflo had developed and manufactured the product, and then used these fraudulently secured samples and information to unlawfully develop a product to compete with Microflo's. Even more to the point, based on the timing of Liberty's creation of its own competitive Filters, Walgreen's favorable testing of Microflo's Filters and

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

2

agreement to the price for the Filters, repeated assurances that Walgreen would shortly be going forward with the purchase of the Microflo Filters, Walgreen's internal broadcast announcement (with a copy to Microflo) of its intent to proceed with the purchase the Microflo Filters and Liberty' assurance to Microflo that it would work with Microflo to complete the sale of Microflo Filters to Walgreen on financial terms acceptable, Microflo had reason to believe (and still believes) that Liberty tortiously interfered with Microflo's prospective economic advantage from the prospective sales of its Filters to Walgreen.

Microflo has been in the business of selling re-usable Filters or non-disposable Filters ("Filters") used in the processing of photographs in one-hour labs such as those operated by Walgreen. Declaration of Edward Malkin in Support of Defendants' Special Motion to Strike Complaint for Malicious Prosecution per CCP 425.16 and Request for Sanctions ("Malkin Declaration") at ¶3. Liberty Synergistics, Inc., a California corporation ("Liberty"), doing business as Liberty Photoproducts, engaged in the distribution and supply of chemistry, disposable filters and supplies to one hour photo labs. Malkin Declaration ¶2. Liberty had been (and may continue to be) a regular supplier of disposable Filters and supplies for use in one-hour photo labs to Walgreen Co. ("Walgreen"). Malkin Declaration ¶2.

In March of 2004, on behalf of Microflo, Malkin contacted Walgreen with the goal of soliciting a purchase of the Filters by Walgreen. Malkin Declaration at ¶4. In the last week of April, 2004, Malkin met with Walgreen personnel at Walgreen's offices in Illinois to show the Filters, discuss price and continue soliciting a purchase of the Filters by Walgreen. Malkin Declaration at ¶5. At this meeting Michael Tumis ("Tumis"), a Walgreen employee, asked that Microflo provide samples of the Filters for testing by Walgreen in its test site laboratories and Microflo agreed to do so. Malkin Declaration at ¶5. Malkin Declaration at ¶5. Tumis also inquired about what was involved in manufacturing the Filters. Malkin Declaration at ¶5.

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

3

1

2   Approximately one month later, Microflo transmitted four sets of Filters to Walgreen for purposes of Walgreen testing the Filters. Malkin Declaration at ¶6.  In late July or the beginning of August of 2004 Malkin had a telephone conversation with Tumis in which Tumis advised that the Filters were acceptable, that the price discussed seemed acceptable, and that Walgreen would go ahead with the purchase of the Filters but that the purchase would need to go through Liberty. Malkin Declaration at ¶6.  In late July of 2004 or at some point in August of 2004 prior to August 23, 2004, Tumis also stated that Walgreen had approved the budget for purchase of the Filters in June. Malkin Declaration at ¶6.

10

11   A meeting then took place on August 23, 2004 at which Malkin and Tumis were in attendance to finalize the transaction and Walgreen and Microflo agreed upon the specific price

12   of $16.00 per filter. Malkin Declaration at ¶7.  However, Tumis again advised Malkin that

13   Walgreen would not purchase the Filters directly from Microflo, but that they were to be sold by

14   Microflo to Liberty and then purchased by Walgreen from Liberty. Malkin Declaration at ¶7.

15   Tumis also advised Malkin in 2004 that Walgreen had provided Liberty with the sample Filters

16   which had been provided by Microflo to Walgreen for testing. Malkin Declaration at ¶8.

18   On or about August 27, 2004 Malkin met with Liberty at its offices in California. Malkin

19   Declaration at ¶9. Prior to this meeting Malkin had a telephone conversation with Julie Swink, a

20   Liberty employee ("Swink"), in which Swink stated to Malkin that the Filters were a good

21   product and that someone from purchasing and someone from product development were also

22   going to be in attendance at the August 27 meeting. Malkin Declaration at ¶9  During the

23   meeting Malkin engaged in discussion with the Liberty personnel about the logistics of Liberty's

24   purchase of the Microflo Filters, the roll-out of the Filters to Walgreen, and other topics related

25   to the sale. Malkin Declaration at ¶9. However, Liberty personnel also asked Malkin questions

26   related to product development, such as how the Filters were made, what they were made of,

27

28   4

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

what each component part of the Filters was made of, how many cavities were in the mold which was used to make the Filters, where the Filters were made, and why the Filters were made in Mexico. Malkin Declaration at ¶9. In reliance upon the assurances provided by Tumis, Liberty, and Swink that Walgreen was proceeding with the purchase of the Filters and that Liberty would proceed with the purchase of the Filters for resale to Walgreen, Malkin answered these questions. Malkin Declaration at ¶9.

Liberty then advised that it wanted to be paid 33% of the gross receipts from Microflo's sales of Filters to Walgreen. Malkin Declaration at ¶10. Given Liberty's minimal role in the transaction, Malkin balked at having Microflo pay Liberty 33% of the sales price to be paid by Walgreen. Malkin Declaration at ¶10. Liberty was insistent upon its financial terms, and Malkin, on behalf of Microflo, decided that Microflo was not interested in selling to Walgreen through Liberty. Malkin Declaration at ¶10.

On September 21, 2004, on behalf of Microflo, Malkin advised Walgreen (through Tumis) that Microflo was not interested in proceeding with the sale of Filters to Walgreen through Liberty. Malkin Declaration at ¶11. Malkin also confirmed that Microflo's Filters had been provided to Walgreen for testing only and needed to be returned at once; however, they were never returned. Malkin Declaration at ¶11. Malkin also stated that Microflo remained open to selling the Filters directly to Walgreen. Malkin Declaration at ¶12.

In mid to late October of 2004 Malkin had a telephone conversation with Tumis in which Tumis advised that Walgreen was willing to buy Filters directly from Microflo without requiring Microflo to do business with Liberty. Malkin Declaration at ¶13. Shortly thereafter Malkin had a telephone conversation with another Walgreen employee in which Malkin was advised that Walgreen was going to issue to Microflo a purchase order for Filters. Malkin Declaration at ¶13.

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

5

In December, Liberty advised Microflo that it was willing to negotiate a substantially lower margin on a sale of Filters to Liberty and resale of the Filters to Walgreen, as well as Liberty's willingness to handle more of the work involved.  Malkin Declaration at ¶14.  On December 21, 2004 Liberty sent to Microflo a specific pricing proposal, which was acceptable to Microflo. Malkin Declaration at ¶14.

There then ensued multiple communications between Microflo and Liberty regarding the sale through January, indicating that the transaction was going forward.  Malkin Declaration at ¶15.  In fact, on January 23, 2005, Tumis advised various store or photo lab managers and others at Walgreen by e-mail (with a copy to Microflo) stating, in part, as follows:

> In a very short while the company will be changing/converting the throw-away Filters on your Fuji equipment to a new-reusable filter.  A representative from the company MicroFlo (Edward Malkin) will be visiting your stores to take some basic measurements of the filter pods.
>
> Please welcome him into our labs for his engineering of the filter is critical to our success.
>
> The filter has been proven to (be) very reliable and easy to use in our 120 day test in Puerto Rico.  Standard Operating Procedures will accompany the filter and the rollout chainwide. Malkin Declaration at ¶15.

Tumis and Malkin continued to exchange communications through mid-February, intended to help Microflo plan for Walgreen's requirements and prepare to manufacture and supply the Filters through Liberty to Walgreen.  Malkin Declaration at ¶16.  Then on February 17, 2005 the President and CEO of Liberty sent Microflo a letter advising that Liberty had "been unable to conclude an arrangement with Walgreens to supply Microflo Filters to Walgreens. . . . Accordingly, we regret that at this time Liberty will not be entering into a contract with Microflo to purchase such Filters and a supplier agreement with Walgreens to supply Microflo's Filters." Malkin Declaration at ¶16.  Thereafter, Malkin contacted Walgreen and, on behalf of Microflo, offered to sell the Filters directly to Walgreen rather than through Liberty.  Malkin Declaration at

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

6

¶17. On March 29, 2005 Tumis wrote to Microflo advising that Walgreen had not yet decided on a vendor. Malkin Declaration at ¶17.

In May of 2006 Microflo learned that Liberty had approached Wal-Mart, Microflo's largest single customer of many years standing, and proposed to sell to Wal-Mart washable, reusable Filters for use in the photo processing machines in Wal-Mart's one-hour photo labs. Malkin Declaration at ¶18. In response to this news and in order to meet the competition from Liberty, Microflo lowered the price for its Filters to Wal-Mart and Costco (sold through a distributor in Minnesota named Pakor). Malkin Declaration at ¶19.

It was thus that Malkin learned that Liberty had been able to develop a product to compete with Microflo's filters, and had apparently done so during the period that (a) Microflo had provided sample filters to Walgreen, (b) Walgreen had transferred the sample filters to Liberty, (c) Malkin had answered all of Liberty's questions about development and manufacture of the filters, (d) Liberty and Walgreen retained the sample filters for many months, despite Malkin's request that they be returned. Malkin had participated during all those months based upon a belief that Liberty and Microflo were acting in good faith and being truthful in assuring Malkin that their sole interest in the filters was for purposes of purchasing them from Microflo.

Based upon these facts, Microflo reasonably concluded that Liberty had probably engaged in a conspiracy with Walgreen to unlawfully secure sample filters, unlawfully secure information about the development and manufacture of the filters, unlawfully maneuver to retain the samples for sufficient time to reverse engineer them, and then unlawfully market the filters to complete with Microflo. Believing it had been wronged, Microflo then consulted with counsel and, on June 24, 2008, proceeded to file a civil complaint in the state courts of New York against Liberty, Swink, Dan Foy, Ronald N. Green, Ravi Krish, Rick Cole, and Gary Green (collectively, the "Liberty Defendants"), and against Walgreen and Tumis (collectively, the

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

7

1
"Walgreen Defendants"), thereby initiating litigation by Microflo against the Liberty Defendants

2
and the Walgreen defendants (the "Underlying Litigation").  Malkin Declaration at ¶20.  The

3
Liberty defendants timely removed the matter from the New York state courts to the Federal

District Court for the Eastern District of New York. Malkin Declaration at par. 21.

5      **The Progress of Microflo's Litigation Against Liberty and Others.**

7      Preliminarily, it should be noted that Liberty's Complaint makes provides a significantly

misleading impression of the litigation Microflo commenced against it and other defendants

8
("the Litigation").  For example, Liberty complains that it expended $495,000 in defense of the

10
Litigation, even though substantive discovery did not proceed very far.  The reason for this

11
anomaly is that in lieu of an answer, Liberty filed a motion seeking to dismiss the Complaint

12
against it and its employees for lack of jurisdiction.  Jurisdictional discovery was conducted and

13
confirmed the factual bases for jurisdiction in New York; nonetheless Liberty re-filed its motion.

14
After oral argument (at which, like most court appearances in this matter, Liberty was

15
represented by three attorneys, one from New York, one traveling from California and one

traveling from Texas) the judge summarily dismissed Liberty's motion and confirmed

jurisdiction.

19      The Underlying Litigation was initiated by Microflo's filing of a complaint against the

20
Liberty Defendants (and the Walgreen Defendants) on June 24, 2008. See complaint attached to

21
the complaint filed by Liberty in this litigation.  The Liberty Defendants timely removed the

22
Underlying Litigation from the New York State courts to the Federal District Court for the

23
Eastern District of New York. Malkin Declaration at ¶21.

24
There then ensued a lengthy legal battle in which the Liberty Defendants unsuccessfully

25
challenged jurisdiction over the Liberty Defendants in New York and the Walgreen Defendants

26
unsuccessfully challenged whether Microflo's complaint in the Underlying Litigation stated a

27

28

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

8

cause of action (with the exception of the civil RICO count in the complaint which Microflo, on the advice of counsel, agreed had not stated a cause of action). Malkin Declaration at ¶22. The Walgreen Defendants filed a motion in the Underlying Litigation seeking to dismiss the counts pled against Tumis (and also pled against the Liberty Defendants) under F.R.C.P. 12(b)(6) for failure to state a claim upon which relief could be granted (the "Walgreen 12(b)(6) Motion"). Sabourin Declaration ¶10. Except for that portion of the Walgreen 12(b)(6) Motion dealing with the count in the complaint in the Underlying Litigation pertaining to the assertion of a civil RICO claim (which Microflo did not contest due to counsel's belief on review of the count in light of the motion that the length of time during which the wrongful conduct alleged to have occurred would be insufficient to establish that element of a valid civil RICO claim dealing with pattern), the Walgreen 12(b)(6) Motion was denied. Sabourin Declaration ¶11.

In January of 2010, counsel for Microflo advised Microflo that the Liberty Defendants had proposed a settlement (supported by the provision of a volume of document copies which counsel refused to share with Microflo or Malkin and the content or substance of which counsel also refused to describe with Microflo or Malkin). Malkin Declaration at ¶23. Counsel advised Microflo that the proposed terms of the settlement were that Microflo would dismiss with prejudice the pending action against the Liberty Defendants. Malkin Declaration at ¶23.

On or about January 11, 2010 Dennis H. Sabourin, Esq. ("Sabourin"), one of Microflo's counsel in the Underlying Litigation received from counsel for Liberty, Mr. Ducote, a letter providing a set of documents produced by the Liberty Defendants and proposing a settlement in the form of a dismissal by Microflo of its case. Declarations of Dennis H. Sabourin, Esq. in Support of Notice of Special Motion to Strike Complaint for Malicious Prosecution per CCP 425.16 and Request for Sanctions ("Sabourin Declaration") at ¶4. A true and correct copy of Mr. Ducote's January 11, 2010 letter (the "1/11/10 Liberty Settlement Offer") is attached to the

Sabourin Declaration as Exhibit A [without the 208 pages of documents produced with the letter, the "Liberty Settlement Proposal Documents"]. Sabourin Declaration ¶4. The 1/11/10 Liberty Settlement Offer includes the following language pertaining to the use of the documents provided and Liberty's proposal for settlement of the matter:

> After you have had a chance to review these documents, I invite your client's dismissal.
>
> The documents, as well as being used only for settlement, are also designated under the protective order in place as Confidential-Attorney's Eyes Only. If, when you have completed your review, and have concluded you should recommend dismissal, if making certain of the documents available to your client is desired by you, Liberty will consider a request to make the documents available to Mr. Malkin on a document by document basis.   Sabourin Declaration ¶4, Exhibit A.

Each page of each document that was provided with the 1/11/10 Liberty Settlement Offer was marked "Confidential Attorney Eyes Only." Sabourin Declaration ¶5. Pursuant to a Protective Order entered earlier in the case, this meant that only counsel could review each document, and Sabourin could not show any document to his client, Microflo. Sabourin Declaration ¶5. Reasonably interpreted, it was Sabourin's view that this meant that he could not circumvent the order by sharing the substantive content of the documents with his client in the Underlying Litigation. Sabourin Declaration ¶5. Each page of each document (208 pages) also bore a large stamp stating "Settlement." Sabourin Declaration ¶6. Finally, the 1/11/10 Liberty Settlement Offer also stated that if, after Sabourin concluded he should recommend dismissal of the litigation, he desired to make certain of the documents available to Malkin, Liberty would consider the request on a document-by-document basis. Sabourin Declaration ¶7 and Ex. A.

Sabourin carefully reviewed the documents supplied, but could not fully understand them, as some implicated engineering issues and terminology. Sabourin Declaration ¶8. He determined that he required Malkin's input to both to assess their full meaning and impact and so

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

10

that he could have a reasonable discussion with his client about whether or not, based on the documents provided with the 1/11/10 Liberty Settlement Offer, Microflo should consider settling the case with the Liberty Defendants on the settlement terms proposed by counsel for the Liberty, namely, by dismissing the case against the Liberty Defendants with prejudice. Sabourin Declaration ¶8.

In fact, Sabourin never recommended to Microflo a settlement of the Underlying Litigation based on the content of the Liberty Settlement Proposal Documents. Sabourin Declaration ¶12. Sabourin personally maintained possession and control of the Liberty Settlement Proposal Documents, showing them to no one (other than his secretary who filed them) prior to the institution of this litigation and now having shared them only with Eugenie Temmler, Esq. of his office (also involved in the representation of Microflo as counsel for Microflo in the Underlying Litigation). Sabourin Declaration ¶13. Sabourin never made a copy of the Liberty Settlement Proposal Documents and, to the best of his knowledge and belief, no one at his office has ever made a copy of the Liberty Settlement Proposal Documents. Sabourin Declaration ¶13.

Sabourin requested counsel for the Liberty Defendants to allow him to share with Malkin the Liberty Settlement Proposal Documents but Liberty was unwilling to allow the documents to be shared with Malkin unless Microflo was willing to allow counsel for the Liberty Defendants to share the confidential documents Microflo had produced with an officer at Liberty, something Microflo was unwilling to do and something which seemed to have no sensible relationship to sharing with Malkin the content of documents intended by Liberty to promote a settlement by Microflo in the form of a dismissal with prejudice. Sabourin Declaration ¶14. Consequently, Sabourin never shared the substantive content of the Liberty Settlement Proposal Documents with Malkin or any other representative of Microflo. Sabourin Declaration ¶15.

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3838

11

Sabourin did advise Malkin that, in his view, the Liberty Settlement Proposal Documents might support the assertion by Liberty that Liberty "independently" developed its own reusable filters for use in one hour photo processing after Microflo was advised by Walgreen in March of 2005 that Walgreen would not be going ahead with a purchase of Microflo filters but that, in his view at least, those same documents also appeared to clearly support (1) a claim of tortious interference by Liberty with the prospective economic advantage of the proposed business relationship with Walgreen, and (2) the position that Liberty acted unfairly, probably fraudulently, and certainly with a lack of good faith and fair dealing in its dealings with Microflo. Sabourin Declaration ¶16.

Notwithstanding Sabourin's general view of what the Liberty Settlement Proposal Documents revealed, Microflo eventually decided to accept the settlement proposal that had been made by the Liberty Defendants in the 1/11/10 Settlement Offer to dismiss the matter as against the Liberty Defendants with prejudice and also settled with the Walgreen Defendants, also dismissing with prejudice as to the Walgreen Defendants as part of a settlement agreement with the Walgreen Defendants. Sabourin Declaration ¶17. To the best of Sabourin's knowledge and belief, Microflo was not motivated to settle due to Malkin's or Microflo's belief that the core of its case (that the Liberty Defendants, in collusion with Tumis, had engaged in a false and misleading course of conduct amounting at the very least to tortious interference with Microflo's prospective economic advantage in dealing with Walgreen) was not valid or winnable. Sabourin Declaration ¶18.

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

12

1

**3.** **Settlement of the Litigation by Microflo's Dismissal of its Complaint**
2

3      After the court in the Underlying Litigation dismissed Liberty's jurisdiction motion and

affirmed jurisdiction and dismissed the Walgreen Defendants' failure to state a cause of action

motion, it entered a Case Management Order with a discovery timetable.  At this point Microflo

needed to assess a number of factors to determine whether it made sense to proceed and,

eventually, decided to settle.

8      From the date of 1/11/10 Settlement Offer, the Liberty Defendants never communicated a

9
termination of the settlement offer or a deadline at which the offer would expire.  Sabourin

10
Declaration ¶20.  On June 18, 2010, in a series of 3 e-mails (wanting to settle the Underlying

11
Litigation and avoid the additional time and expense which would be involved in producing

12
Malkin for his deposition, then scheduled for the following week, and in proceeding with the

13
Underlying Litigation), acting on behalf of Microflo, Sabourin settled the case against the

14
Liberty Defendants.  Sabourin Declaration ¶21.  Essentially, Microflo accepted the offer of

15
settlement made on behalf of the Liberty Defendants in the 1/11/10 Settlement Offer.  See the 3

16
e-mails attached to Sabourin Declaration as Exhibit B.

18      As is clearly stated on the face of the first of those e-mails, the dismissal with prejudice

19
was offered to the Liberty Defendants as a settlement, stating: "I [Sabourin] have been

20
authorized by my client to offer settlement to the Liberty defendants in the form of a dismissal of

21
the pending action with prejudice, each party to bear their own costs." Sabourin Declaration ¶22

22
and Ex. B.  The second of the 3 e-mails also effectively notes that the offer is a settlement offer,

23
stating: "we are also willing to exchange mutual releases in connection with the settlement for

24
acts and omissions through the date of settlement."  Sabourin Declaration ¶23 and Ex. B.  The

25
third of the 3 e-mails attached hereto as Exhibit B reflects the discussions between counsel for

26

27

28                                          13

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUBAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

the Liberty Defendants and Sabourin leading to a final agreement and continues to make clear

that the dismissal with prejudice was a negotiated settlement, stating:

> Thank you for your prompt response.  It is agreed, plaintiff will dismiss the pending cause of action in the United States District Court, Eastern District of New York with prejudice.  Each party will bear their own costs incurred in the action.  There are no other terms associated with the agreement of dismissal as between the plaintiff and the Liberty defendants.
>
> Mr. Malkin will not be appearing for the deposition next Tuesday.  Microflo has also settled with Mr. Tumis and Walgreen.  [Emphasis supplied.]  Sabourin Declaration ¶24 and Ex. B.

There then ensued a series of e-mails between counsel for the various parties in the

Underlying Litigation pertaining to the form and filing of the stipulation of dismissal with

prejudice pursuant to the agreed upon settlement (including 7 separate e-mails from counsel for

the Liberty Defendants in the Underlying Litigation, Harold Ducote, Esq. and Tracy Graves

Wolf, Esq.) and in none of those e-mails do counsel for the Liberty Defendants ever assert that

the dismissal with prejudice is anything other than a dismissal pursuant to an agreement, a

settlement agreement, reached between the parties in the Underlying Litigation.   Sabourin

Declaration ¶25 and Ex. C.

The settlement of the Underlying Litigation was completed as between Microflo and the

Liberty Defendants by means of the execution on behalf of all of the Parties and the filing of a

stipulation of dismissal with prejudice under F.R.C.P. 41(a)(1)(ii) followed by a confirming

order by the Federal District Court for the Eastern District of New York placed on the second

page of the stipulation.  Sabourin Declaration ¶26 and Ex. D.

To the best of Sabourin's knowledge and belief, Microflo was motivated to settle due to

Microflo's future business prospects in an industry which it perceived of as dying out due to the

changeover from film to digital photography and chemistry film development and printing to ink

jet printing; Malkin's age, health, and prospective retirement; the higher than anticipated cost of

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

14

the Underlying Litigation; and a cost/reward benefit analysis weighing the possible financial upside of prevailing in the Underlying Litigation on the most conservative view of the damages which might be recovered and the time, expense, and risk of completing the Underlying Litigation. Sabourin Declaration ¶19.

In fact, during the pendency of the Underlying Litigation, Malkin had been diagnosed with and treated for a form of cancer (not "serious"); diagnosed with and was being treated for depression; Microflo's business and the industry in which it operated was dying out due to the changeover from film to digital photography and chemistry film development and printing to ink jet printing; Microflo had no other product than the Filters and Malkin felt that he was unlikely to have the drive or energy to launch a new business venture; and felt that he was getting to the age where he would have to soon consider retiring. Malkin Declaration ¶28. Based on these factors as well as the potential conservative projection of a likely damages award if Microflo should prevail on the one hand and the projected cost of continuing the Underlying Litigation through to conclusion (especially in light of the way the Liberty Defendants had conducted the litigation up to that point) and projected risks and projected time frame through not only a trial in the Underlying Litigation but also through any appeal, it was determined that Microflo should accept the Liberty Defendants' offer to settle the Underlying Litigation and should offer to enter into a settlement agreement with the Walgreen Defendants. Malkin Declaration ¶28.

Microflo did not settle the Underlying Litigation due to a belief that it had not been wronged by the Liberty Defendants and the Walgreen Defendants or even due to a belief that Microflo would not ultimately prevail at a trial on the merits in Federal District Court in the Eastern District of New York. Malkin Declaration ¶29. In short, Microflo settled as a result of Malkin's age, Malkin's health, Microflo's finances, the state of Microflo's business, the anticipated amount of time thought likely to conclude the Underlying Litigation and the

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

15

anticipated appeals in the Underlying Litigation, and a comparison of those costs to the amount conservatively projected as a damage award. Malkin Declaration ¶29.

At all times during Microflo's pursuit of the Underlying Litigation, Microflo (and Malkin) held a good faith belief that Microflo had been had been wronged by the Liberty Defendants and the Walgreen Defendants. Malkin Declaration ¶32. At no time did Microflo pursue the Underlying Litigation for purposes other than the recovery of the damages which Microflo believed it had suffered due to wrongful conduct of the Liberty Defendants and the Walgreen Defendants. Malkin Declaration ¶33.

4.   **The Egregious Conduct of Liberty in Pursuing this Malicious Prosecution Litigation.**

Prior to the filing of Liberty's complaint in this cause of action, counsel for Liberty threatened to file this cause of action if Microflo did not "settle" Liberty's claim for "malicious prosecution" by paying the sum of $495,000 in legal fees (and costs?) allegedly incurred by Liberty in the Underlying Litigation. Sabourin Declaration ¶30. In response, on September 13, 2010 Sabourin wrote to counsel for Liberty, counsel for the plaintiff in this cause of action, and explicitly advised Liberty, through its counsel, that this cause of action amounted to frivolous litigation and set forth in the letter, briefly, a discussion of the case law (with citation to the relevant authorities) establishing that this action clearly could not lie as (1) the Underlying Action was resolved by settlement, not on the merits (and, hence, not constituting a "favorable termination" for malicious litigation purposes); (2) any malicious litigation claim by Liberty would be governed by New York law; and (3) that under New York law the requirement for special damages, the "English Rule," would apply and that Liberty simply could make no such showing (putting aside Microflo's position that it had probable cause to bring the Underlying

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

16

litigation and that it did not settle that litigation due to a lack of merits in support of the litigation).  Sabourin Declaration ¶30 and Ex. E.

## LEGAL ARGUMENT

### POINT ONE

### THE COMPLAINT SHOULD BE DISMISSED
### PURSUANT TO CAL. C.C.P. §425.16

**1.   The Complaint Alleges a Cause of Action Arising From Defendants' Rights Of Petition In Connection With A Public Issue.**

Cal. C.C.P. §425.16 ("§425.16") provides that:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issues shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

In ruling upon defendant's motion to strike, this Court must therefore first determine whether the Complaint, which alleges but a single cause of action, viz. malicious prosecution, falls within the category of actions subject to the statutory protection.  Cal. C.C.P. §425.16(e) provides that:

> As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes (1) any written or oral statement or writing made before a . . . judicial proceeding.

California courts have consistently ruled that actions for malicious prosecution are subject to a motion to dismiss under §425.16.  See, e.g., Daniels v. Robbins, 182 Cal. App. 4th 204 (Cal. App. 4th Dist. 2010), holding that "any action for malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding."  Id. at 214-215.  See also Jarrow Formula,

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

17

Inc. v. LaMarche, 31 Cal.4th 728 (2003), affirming a lower court's conclusion that §425.16 was intended to apply to causes of action for malicious prosecution.

**2.**   **There Is Virtually No Likelihood That Plaintiff Will Prevail On Its Claim.**

A.   This Court Would Apply New York Law.

When assessing a malicious prosecution claim arising out of an earlier civil litigation brought by a New York plaintiff, litigated in New York State Court or the United States District Court for New York, litigated against a California defendant, and resulting in a subsequent California action brought by a California plaintiff who had previously been a defendant in the earlier New York action, California's choice of law rules will apply New York law. Engel v. CBS, Inc., 981 F.2d 1076, 1080-1082 (9th Cir. 1992). The Engel court noted first that a federal court will determine choice of law issues based upon the law of the state in which it is sitting. Id. at 1080-1081. It then determined that under the California approach, the forum court must apply a test of "comparative impairments" to determine which state's rights would be more impaired if its policy were subordinated to the policy of the other state. Id. at 1081. The Engel court found that California had a significant interest in the litigation, including its interest in protecting its citizens from malicious prosecution. It concluded, however, that the rights of New York would be more significantly impaired if California law were applied than California would be if New York law were applied. This was because "[t]he cause of action upon which the malicious prosecution claim is based was filed and litigated in New York." The Court noted that New York law restricts malicious prosecution suits in a manner in which California law does not (viz. by requiring "special injury") and concluded that

> [i]f New York litigants can avoid this requirement, and successfully sue other New York litigants for malicious prosecution by choosing a different forum then the efficacy of New York's special-injury requirement will be undercut. New York seeks to control the number of malicious prosecution actions filed against New York litigants by imposing a stringent special

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

18

injury requirement.  If a plaintiff can circumvent this requirement by filing his or her claim in a different forum, New York's policy of limiting malicious prosecution actions, based on New York litigation, will be seriously impaired.

Id. at 1081-2.

B.    Elements of Cause of Action for Malicious Prosecution.

In order to prevail on a claim for malicious prosecution in New York, Liberty must show (a) the initiation of an action by Microflo (or any of the defendants)[1] against it, (b) begun with malice, (c) without probable cause to believe it could succeed, (d) that terminated in favor of Liberty, and (e) that caused special injury, i.e. interference with Liberty's person or property beyond the ordinary burden of defending a lawsuit.  CA, Inc. v. Simple.com, Inc., 621 F.Supp.2d 45, 55 (E.D. N.Y. 2009), citing Engel v. CBS, Inc., supra at 502.  Liberty cannot provide even the slightest evidence of any of these elements other than the first, i.e. that Microflo initiated an action against it.  To the contrary, the facts set forth earlier in this brief show that the decision to file suit was prompted by objective facts (many documented) together with a chronology of events leading to the reasonable belief that Liberty and conspired to steal its product.  There was probable cause to believe that the core of the Underlying Litigation would succeed at the outset and that the core of the Underlying Litigation would succeed if litigated even when the action was terminated.  The Underlying Litigation was not terminated in favor of Liberty (within the meaning of the required elements for a malicious prosecution action).  Finally, Liberty did not suffer and has not even pled that it suffered any special injury as a result of the Underlying Litigation.

---

[1] The Complaint makes no factual allegations against defendant Ecotech, and appears to have joined this defendant for strategic purposes of reaching Ecotech assets.

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3838

1

2  **C.  The Underlying Litigation Did Not Result in a Favorable Termination for Liberty.**

3  There is also no question that Liberty simply cannot show that Microflo's litigation against it terminated in favor of Liberty. The indisputable facts are that not long after the court dismissed Liberty's ill-conceived challenge to jurisdiction, Microflo determined for various reasons that it no longer made sense to continue the case.

7  First and foremost, Liberty cannot get beyond the element that there was no favorable termination in its favor of the Underlying Litigation. New York courts are consistent in holding that the dismissal of a civil case as part of a settlement does not equal a "favorable determination" for purposes of supporting a malicious prosecution claim arising out of the civil action. *See, e.g.,* Furgang & Adwar, LLP v. Fiber-Shield Industries, Inc., 866 NYS 2d 250 (2d Dept. 2008); Sipsas v. Vaz, 855 N.Y.S.2d 248 (2d Dept. 2008). On this point it is extremely distressing that the defendants have been put through this exercise as the California courts also require that in order to succeed on an action for malicious prosecution, a plaintiff must show that the complained-of prosecution was resolved in his favor. *See, e.g.,* Casa Herrera, Inc. v. Beydoun, 32 Cal. 4th 336 (2004) and a settlement is also not considered a resolution in favor of the plaintiff and cannot sustain an action for malicious prosecution under California law. Siebel v. Mittelsteadt, 41 Cal. 4th 735 (2007).

20  It was Liberty that initiated the proposition that the Underlying Litigation should be settled by a dismissal with prejudice after Microflo's counsel reviewed the documents Liberty provided on January 11, 2010. Liberty's attorney sent these documents with a cover letter (Ex. A to Sabourin Declaration) that expressly stated that they were offered "only for settlement" purposes. Counsel even took the extra step of stamping each and every page of each document "Settlement" (Sabourin Declaration ¶6) and proposed the core settlement terms which were

27

28

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

20

eventually granted to the Liberty Defendants, a flat out dismissal of the Underlying Litigation against them with prejudice.

The matter may or may not have been settled by an acceptance of the 1/11/10 Liberty Settlement Offer.  Nonetheless, it was clearly settled.  As shown by Exhibit B to the Sabourin Declaration, the dismissal of the Underlying Litigation by Microflo as against the Liberty Defendants with prejudice with each party to bear its own costs.  In fact, in communicating the offer by Microflo to dismiss the Underlying Litigation with prejudice, Sabourin explicitly notes that it is a settlement offer, stating: "I have been authorized by my client to offer settlement to the Liberty defendants in the form of a dismissal of the pending action with prejudice, each party to bear their own costs."  Sabourin Declaration ¶22 and Ex. B.  Sabourin refers to the offer as a settlement again in a second e-mail.  Sabourin Declaration ¶23 and Ex. B.  Consistent with the fact that the Underlying Litigation was being settled, Sabourin sent yet a third e-mail to opposing counsel in the Underlying Litigation noting that the terms of the dismissal with prejudice had been agreed to and again clearly indicating that the agreement with the Liberty Defendants was a settlement by noting that "also settled" with the Walgreen Defendants.  Sabourin Declaration ¶24 and Ex. B.

There then ensued a series of e-mails between counsel for the various parties in the Underlying Litigation pertaining to the form and filing of the stipulation of dismissal with prejudice pursuant to the agreed upon settlement (including 7 separate e-mails from counsel for the Liberty Defendants in the Underlying Litigation, Harold Ducote, Esq. and Tracy Graves Wolf, Esq.) and in none of those e-mails do counsel for the Liberty Defendants ever assert that the dismissal with prejudice is anything other than a dismissal pursuant to an agreement, a settlement agreement, reached between the parties in the Underlying Litigation.  Sabourin Declaration ¶25 and Ex. C.  Liberty simply cannot possible contend at this point that the

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

21

Underlying Litigation was terminated other than by a settlement and, as noted above, a settlement is not a "favorable termination" for purposes of the required elements in a malicious prosecution action under either New York or California law. As to New York law, Liberty was specifically apprised of this fact prior to bringing this cause of action. Sabourin Declaration ¶30 and Ex. E.

In addition, the settlement of the Underlying Litigation was not driven by a determination that the merits of the case would not result in a favorable outcome to Microflo. Rather, as shown by the accompanying Declarations of Sabourin and Malkin, the decision was based upon a number of factors including the very high costs of defending Liberty's jurisdiction motion; the risk-reward analysis of prevailing; the age and ill health of Malkin; and the state of the industry in which Microflo operated and the declining business being conducted by Microflo as a result.

D.   The Underlying Litigation Did Not Cause Liberty to Suffer any Special Injury.

Next, and again clearly, Liberty cannot show, and has not even pled, special injury. Nothing significant happened in the underlying litigation other than Liberty prosecuting a fruitless challenge to jurisdiction, Liberty's initiation of substantive discovery demands on Microflo, Liberty's presumed review of document production by Microflo and answers to interrogatories by Microflo, some relatively minimal discovery, and settlement discussions. There was no interference with Liberty's person or property or any other injuries to Liberty which would constitute a "special injury." The only damages of which it complains are the "ordinary burden" of defending a lawsuit. Granted, it is not "ordinary" for a defendant to spend $495,000 in attorneys' fees and costs primarily to prosecute a meritless challenge to jurisdiction and venue; but however interesting this topic is not pertinent to Microflo's motion.

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

New York's special-injury requirement requires a plaintiff to "show interference with person or property, for example, by way of some remedy such as attachment, arrest or injunction." *Id.* at 1081, quoting <u>Molinoff v. Sassower</u>, 471 N.Y.S.2d 312, 314 (N.Y. App. Div. 1984). As Liberty was well aware prior to filing its complaint in this litigation, unlike California, New York law applies the "English Rule" to malicious prosecution causes of action requiring a showing of the current day equivalent of special injury, "that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit." <u>Engel v. CBS, Inc.</u>, 93 N.Y.2d 195, 205, 711 N.E.2d 626 (N.Y. 1999) and Sabourin Declaration Ex. E. Not only can Liberty not show any such injury, it has not even pled it. Whether Liberty chose the forum of California for purposes of avoiding this requirement is of course not known to Microflo. However, regardless of whether this was the motivation for the choice of forum, the law remains clear that this Court is to apply New York law in evaluating plaintiff's cause of action and that Liberty suffered no special injury in the Underlying Litigation.

E.  <u>Liberty Cannot Show that Microflo Lacked Probable Cause to Bring and Maintain the Underlying Litigation.</u>

To meet the standard of "reasonable probability" as used in Sec. 425.16 plaintiff need show "only a minimum level of legal sufficiency" and that to meet this standard plaintiff need "only state and substantiate a legally sufficient claim." <u>Jarrow Formula</u>, *supra* at 746. However, Liberty cannot merely rely on its pleadings to defeat the motion; rather, it must provide competent evidence of its claim of malicious prosecution. <u>Fabbrini v. City of Dunsmuir</u>, 544 F.Supp.2d 1044 (E.D. Cal. 2008). Nonetheless, the Court should grant the motion "if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

23

1

establish evidentiary support for the claim." <u>Wilson v. Parker, Covert & Chidester</u>, 28 Cal.4th

2

811, 821 (Cal. 2002). It is clear that Liberty will not be able to meet this standard.

3

4       In this regard, as to the element being addressed here pertaining to the question of

whether Microflo had probable cause for the action, first, under New York law, probable cause

means probable cause for the Underlying Action as a whole and probable cause is not lacking

simply as a result of its presence or absence as to any particular allegation or put differently, that

there was an entire lack of probable cause in the prior proceeding. <u>Wilhelmina Models, Inc. v.</u>

9

<u>Fleisher</u>, 19 A.D.3d 267, 269-270, 797 N.Y.S.2d 83 (N.Y. App. Div. 2005).

10

11       Further, as to what constitutes probable cause or how its presence or absence is

determined under New York law, the standard is rigorous. Probable cause is present even where

12

the prior cause of action lacks merit and is absent only if all reasonable attorneys would agree

13

that there was no probable cause for the prior litigation out of which the malicious prosecution

14

case arose. As stated by a California court applying California law on this point:

15

16        " 'Probable cause may be present even where a suit lacks merit. Favorable
          termination of the suit often establishes lack of merit, yet the plaintiff in a
17        malicious prosecution action must *separately* show lack of probable cause.
          Reasonable lawyers can differ, some seeing as meritless suits which others
18        believe have merit, and some seeing as totally and completely without merit suits
          which others see as only marginally meritless. Suits which *all* reasonable lawyers
19        agree totally lack merit-that is, those which lack probable cause-are the least
          meritorious of all meritless suits. Only this subgroup of meritless suits present[s]
20        no probable cause.' " [Citations omitted.]

21
<u>Paulus v. Bob Lynch Ford, Inc.</u>, 139 Cal. App. 4th 659, 675, fn 11, 43 Cal. Rptr. 3d 148
22
(Ct. of Appeal 6th Dist. 2006).[2]

23       And further still, even if a lack of probable cause is established, that is not enough.

24 Malice must also be shown. Again, for convenience and in the belief (as yet) that New York law

25

26
2
_____
     Counsel realizes that this is California law, not New York law, however, at least at this point, counsel is not
27 aware that New York law would differ on this point.

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

28                                          24

does not differ on this point, we direct the Court's attention to the following language from *Paulus*:

> Malice cannot be established simply by a showing of the absence of probable cause, although the fact that the prior suit was objectively untenable is *a factor* that may be considered on the issue of malice.

> In *Albertson*, the court noted that four instances demonstrating malice in a civil malicious prosecution case were where the prior suit was commenced (1) by a party who did not believe the claim to be valid; (2) chiefly as a result of hostility or ill will; (3) solely to deprive the party being sued of the beneficial use of that party's property; or (4) for the purpose of extracting a settlement bearing no relationship to the claim. [Citations omitted.]

*Id.* at 675 and footnote 12.

In light of the Declarations of Sabourin and Malkin, Liberty simply cannot meet these standards. Nor can Liberty make more than conclusory allegations indicating that Microflo was the alter ego of Malkin. Finally, Liberty has not even asserting allegations which would support including Ecotech as a party in this malicious prosecution action arising out of an action to which Ecotech was not even a party.

## CONCLUSION

For the reasons set forth above, defendants motion to strike plaintiff's complaint pursuant to CAL. CCP §425.16 and sanctions should be imposed upon Liberty based upon the proofs regarding the amount of attorneys' fees and costs incurred by the defendants in this action.

Respectfully submitted:

LAW OFFICES OF SCOTT E. SCHUTZMAN
Attorneys for Defendants
3700 South Susan Street, Suite 120
Santa Ana, California 92704
Tel:    714-543-3638
Fax:   714-245-2449

*/s/ Scott Schutzman, Esq.*
Dated: January 3, 2011             Scott E. Schutzman, Esq. (SBN 140962)

LAW
OFFICES
OF
SCOTT E.
SCHUTZMAN
3700 S. SUSAN STREET
SUITE 120
SANTA ANA, CA 92704
TELEPHONE
(714) 543-3638

25