UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

LIBERTY SYNERGISTICS, INC.,

                        Plaintiff,

      -against-

<u>AMENDED
MEMORANDUM OPINION
AND ORDER</u>

CV 11-0523 (SJF) (ETB)

MICROFLO LTD., EDWARD MALKIN,
ECOTECH LIMITED, a Cayman Islands Company,
and DOES 1through 20, inclusive,

                       Defendants.

------------------------------------------------------------------------x

       Defendants Microflo Ltd. ("Microflo"), Edward Malkin, and Ecotech Limited ("Ecotech"),

filed this Special Motion to Strike Complaint ("Motion to Strike") under California Code of Civil

Procedure § 425.16, seeking to strike plaintiff's complaint alleging malicious prosecution and

dismiss this action as a strategic lawsuit against public participation ("SLAPP").[1] <u>See</u> Cal. Code

Civ. Proc. § 425.16 (the "anti-SLAPP statute"). Defendants further requests sanctions against

plaintiff, Liberty Synergistics, Inc. ("Liberty"), in the amount of defendants' attorneys' fees and

costs. Liberty filed a Memorandum of Law in Opposition to Defendants' Motion ("Opposition" or

"Opp."), arguing that the Court should deny defendants' Motion to Strike or, in the alternative, allow

plaintiff to engage in limited discovery to enable it to defend against the Motion on its merits. (<u>See</u>

Opp. at 22).

---

[1]Defendants filed this motion on ECF on August 16, 2011. The filing inadvertently failed
to include a memorandum of points and authorities. However, defendants provided a courtesy
copy of the memorandum of points and authorities supporting the motion and subsequently filed
the document on ECF. Also, it is clear that plaintiff received a copy of the memorandum of
points and authorities, because it responded to the memorandum.

For the following reasons, defendants' Motion to Strike is DENIED.

<u>FACTS</u>

The procedural and factual history of this case is complicated. In this action, plaintiff alleges that defendants maliciously prosecuted an earlier civil action in this district against plaintiff (the "Underlying Action"). That earlier action arose out of negotiations over an incipient agreement among Microflo, Walgreen Co. ("Walgreen"), and Liberty, which was never consummated. (<u>See</u> Motion to Strike at 2-7). The details of these negotiations and of the ensuing lawsuit are relevant to the instant Motion to Strike.

Microflo is a New York corporation that produces and sells re-usable or non-disposable filters used in processing photographs in one-hour photo labs. (Declaration of Edward Malkin in Support of Defendants' Motion ("Malkin Decl.") ¶¶ 1, 3). In early 2004, Malkin, Microflo's president and sole shareholder, contacted Walgreen to solicit a purchase of Microflo's filters for use in Walgreen's one-hour photo labs. (<u>Id.</u> ¶¶ 1, 4). At a meeting at Walgreen's Illinois offices in April 2004, Walgreen employee Michael Tumis asked Microflo to provide samples of its filters so that Walgreen could test them. (<u>Id.</u> ¶ 5). Microflo did so, and Tumis thereafter informed Microflo that the filters were acceptable. (<u>Id.</u> ¶ 6). Tumis also asserted that it would purchase the filters, but that the purchase would have to be made through Liberty. (<u>Id.</u>). Tumis later informed Malkin that Walgreen had provided Liberty with the sample filters Microflo had given to Walgreen for testing. (<u>Id.</u> ¶ 8).

On or about August 27, 2004, Malkin met with Liberty at Liberty's California headquarters. (<u>Id.</u> ¶ 9). At the meeting, the parties discussed "the logistics of Liberty's purchase of the Microflo

Filters, the roll-out of the Filters to Walgreen, and other topics related to the sale." (Id.). In addition, Liberty asked "questions related to product development, such as how the Filters were made, what they were made of, what each component part of the Filters was made of, how many cavities were in the mold that was used to make the Filters, where the Filters were made, and why the Filters were made in Mexico." (Id.). Liberty also advised Microflo that it wanted to be paid 33% of the gross receipts from Microflo's sales to Walgreen. (Id. ¶ 10).

Microflo felt that Liberty's financial terms were onerous, and informed Walgreen in September 2004 that it was no longer interested in providing filters to Walgreen through Liberty. (Id. ¶ 11). Tumis and another Walgreen employee later informed Malkin that Walgreen was willing to buy filters directly from Microflo. (Id. ¶ 13). In December 2004, Liberty told Microflo that it would negotiate a lower margin on the sale of filters to Walgreen through Liberty, and sent Microflo a pricing proposal. (Id. ¶ 14). Throughout January 2005, Liberty and Microflo communicated regarding the sale. (Id. ¶ 15). Malkin also continued communicating with Tumis to plan for the preparation and manufacture of the filters for Walgreen. (Id. ¶ 16). On February 17, 2005, Liberty contacted Microflo and stated that it had been unable to conclude an agreement with Walgreen to supply Microflo filters to Walgreen, and would therefore not be entering into an agreement to purchase filters from Microflo. (Id.). Microflo contacted Walgreen and offered to provide filters directly to Walgreen. (Id. ¶ 17). Walgreen responded that it had not decided on a vendor for the filters. (Id.). Malkin learned in May 2006 that Liberty had approached Microflo's customer Wal-Mart, proposing to sell it filters for their one-hour photo processing labs. (Id. ¶ 18). Consequently, Microflo lowered its prices to Wal-Mart and Costco. (Id. ¶ 19).

Microflo then filed the Underlying Action in New York state court against Liberty and a

number of Liberty's employees (the "Liberty Defendants"), and Walgreen and Tumis (the "Walgreen Defendants"). (Id. ¶ 20). The state court complaint alleged causes of action for fraud, unfair trade practices, unjust enrichment, breach of contract and of the duty of good faith and fair dealing, and tortious interference with prospective economic advantage, as well as a civil RICO claim. (See Notice of Removal, Exh. 1 at 20-29). On September 24, 2008, the Liberty Defendants removed the case to the U.S. District Court for the Eastern District of New York on the basis of diversity. (Malkin Decl. ¶ 21).

The parties engaged in jurisdictional, but not substantive, discovery. (Id. ¶ 26). In January 2010, the Liberty Defendants proposed a settlement, which Malkin advised counsel not to accept. (Id. ¶¶ 23-24). On May 11, 2010, the court granted in part the Walgreen Defendants' motion to dismiss, dismissing the civil RICO claim with prejudice. (See Declaration of Harold A. Ducote, Jr. In Support of Liberty's Opposition ("Ducote Decl."), Exh. B at 14). The Liberty Defendants' motion to dismiss was denied. (Id.). On July 1, 2010, the district court dismissed the action with prejudice pursuant to a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Declaration of Dennis H. Sabourin, Esq. in Support of Notice of Special Motion to Strike Complaint ("Sabourin Decl."), Exh. D). The stipulation provided that each party would bear its own costs. (Id.).

Liberty filed the instant action in California state court on September 17, 2010. (See Notice of Removal, Exh. A). The Complaint alleges that Microflo and Ecotech are alter egos of Malkin, and that the three defendants prosecuted the Underlying Action without a "reasonable basis in fact or any probable cause." (Id., Exh. A at 2, 5). Liberty asserts that it "sustained in excess of $495,000 in damages in legal fees and other costs" as a result of the filing and prosecution of the Underlying

-4-

Action.  (Id., Exh. A at 7).  Defendants removed the action to the Central District of California on the basis of diversity, noting that plaintiff Liberty is a citizen of California, while defendant Malkin is a citizen of New York, defendant Microflo is a citizen of New York and not a citizen of California, and defendant Ecotech is a company organized under the laws of the Cayman Islands and has its principal place of business in a state other than California.  (Notice of Removal at 2-3).  On January 3, 2011, defendants filed a motion to strike pursuant to California Code of Civil Procedure § 425.16, which allows a party to bring a special motion to strike a complaint if the cause of action reflected in the complaint arises "from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with public issues."  Cal. Code Civ. Proc. § 425.16.  Defendant simultaneously filed a motion to dismiss for lack of personal jurisdiction which also asked, in the alternative, for venue to be transferred to the U.S. District Court for the Eastern District of New York.  (See Motion Pursuant to F.R.C.P. 12(b)(2) and 12(b)(3) to Dismiss Complaint for Lack of Personal Jurisdiction ("Motion to Dismiss") at 13-17 (Jan. 3, 2011), ECF No. 12).  Before the court ruled on those motions, the parties stipulated to a transfer of the case to the U.S. District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).  See Stipulation to Transfer Entire Case to the U.S. District Court for the Eastern District of New York Pursuant to 28 USC 1404(a) ("Stipulation to Transfer") (Jan. 19, 2011), ECF No. 15.  Defendants then filed the instant Motion to Strike, which was referred to the undersigned on September 14, 2011.  See Order Referring Motion (Sept. 14, 2011).  The Court heard oral argument on October 6, 2011.

DISCUSSION

This case presents a classic choice-of-law question because a tort was allegedly committed

by a New York citizen in New York, which had its alleged effect on a California entity in California.

The parties disagree about whether the law of California or of New York applies to this action. So,

before this Motion to Strike can be decided on its merits, the Court must decide which state's law

applies. This inquiry is complicated, in part, because the case was originally filed in California and

then transferred to New York. The rule in such situations seems straightforward:

> Federal courts sitting in diversity generally apply the law of the state
> in which they sit. However, cases that are transferred from one
> federal district to another present an exception to this general rule.
> When an action has been transferred, a federal court sitting in
> diversity must determine whether to apply the law of the transferor
> state, or the law of the transferee state in which it sits. If a district
> court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a),
> for improper venue, or 28 U.S.C. § 1631, for want of jurisdiction, it
> logically applies the law of the state in which it sits, since the original
> venue, with its governing laws, was never a proper option. In
> contrast, when a case is transferred for convenience under 28 U.S.C.
> § 1404(a), the law of the transferor state is to be applied so long as the
> transferor state could properly have exercised jurisdiction.

Gerena v. Korb, 617 F.3d 197, 204 (2d Cir. 2010) (internal citations omitted).

In this case, defendants, none of which is a California citizen or domiciliary, were sued in

California, and filed two motions prior to filing an answer: (1) a special motion to strike pursuant

to California's Anti-SLAPP statute and (2) a motion to dismiss arguing that the California court did

not have personal jurisdiction over any of the defendants. (See Defendants' Special Motion to Strike

Complaint for Malicious Prosecution per Cal. CCP 425.16 (Jan. 3, 2011), ECF No. 11; Motion to

Dismiss at 4-12). Before the court ruled on either of these motion, the parties stipulated to a transfer

to this Court pursuant to 28 U.S.C. § 1404(a). (See Stipulation to Transfer). Because the transfer

was effected for the convenience of the parties and prior to any ruling on the jurisdictional question,

in order to determine the choice-of-law issue in this case, the Court must first answer the question

of whether the California court had personal jurisdiction over defendants.[2]


I.     The California Court had Personal Jurisdiction over Defendants

In the absence of a federal statute conferring jurisdiction, personal jurisdiction is determined

according to the law of the state in which the district court sits. See Harris Rutsky & Co. Ins. Servs.,

Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003); Thomas v. Ashcroft, 470 F.3d

491, 495 (2d Cir. 2006). Because the question here is whether California would have had personal

jurisdiction over defendants, California law applies.

California's long-arm statute "is co-extensive with federal due process requirements, so the

jurisdictional analyses under [California] law and federal due process are the same." Mavrix Photo,

Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). Due process requires that court may

exercise personal jurisdiction over a nonresident only when there are "'certain minimum contacts'

with the relevant forum 'such that the maintenance of the suit does not offend "traditional notions

---

[2]At oral argument on the motion, counsel for defendants stated that the transfer rendered the issue of California's personal jurisdiction over defendants moot. (Transcript of Sept. 28, 2011 Hearing ("Tr.") at 41-42). Later, however, counsel asserted, "Obviously it's not completely moot, but we don't think it really matters." (Tr. 42). The Court does not interpret this statement as defendants' waiver of any defect in personal jurisdiction of the California court.
    Plaintiff's argument at the hearing that "the act of filing a California substantive anti-SLAPP Motion . . . in and of itself is a concession by defendants that California law is applicable to all claims in this case" (Tr. 22) is unsupported and borders on frivolous.

of fair play and substantial justice."'" Mavrix Photo,, 647 F.3d 1223 (9th Cir. 2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). There are two varieties of personal jurisdiction–general and specific. A court's general jurisdiction is based on a defendant's general contacts with the forum, and may be exercised even over a case in which the subject matter of the suit does not arise from those contacts. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Specific jurisdiction, on the other hand, may be exercised only when the suit arises out of or is related to the defendant's contacts with the forum state. Id. at 414 & n.8.

General jurisdiction over foreign defendants exists "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tire Operations, S.A. v. Brown, — U.S. —, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011). Liberty does not assert that the California court had general jurisdiction over defendants. (See Opp. at 10-11 (arguing only that the California court had specific jurisdiction over defendants). The Court agrees that defendants' contacts with California were not sufficiently continuous and systematic to confer general jurisdiction.

The Ninth Circuit "analyze[s] specific jurisdiction under a three-prong test": (1) the non-resident defendant must purposefully direct his activities toward the forum or purposefully avail himself of the privilege of conducting activities in the forum; (2) the claim must arise out of or relate to the defendant's activities in the forum; and (3) the exercise of jurisdiction must be reasonable under the circumstances of the case. See Mavrix, 647 F.3d at 1227-28. If the party asserting jurisdiction satisfies its burden on the first two prongs, the burden shifts to the party opposing jurisdiction to make a "compelling case that the exercise of jurisdiction would not be reasonable."

Id. at 1228. In cases involving allegedly tortious conduct, like this one, the first prong–purposeful availment or purposeful direction–has three requirements: "the defendant allegedly must have (1) committed an intentional act, (2) expressly directed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."[3] Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal brackets and quotation marks omitted). Thus, the intentional and allegedly tortious act need not have been committed in the forum state, as long as it is directed at and has a harmful effect in the forum state. Id.

It is not disputed that defendants Microflo had the following contacts with California:

1. On August 27, 2004, Microflo, through Malkin, had a meeting in California with Liberty in which the plan to sell Microflo filters to Walgreen through Liberty, insisted upon by Walgreen, was discussed. (Malkin Decl. ¶ 9).

2. After Liberty sent Microflo a pricing proposal, Microflo and Liberty engaged in "multiple communications" regarding the proposed sale through the month of January 2005 and until mid-February 2005. (Id. ¶¶ 15-16).

3. On June 24, 2008, Microflo filed the Underlying Action in New York state court against California defendants Liberty and certain Liberty employees, and thereafter prosecuted the case until it ended in a stipulation of dismissal. (Id. ¶¶ 20-25, 30).

Liberty asserts that the August 27 "meeting, alone, created a substantial connection to California

_____

[3]These requirements, derived from Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), are sometimes called the "Calder effects test." See, e.g., Yahoo!, 433 F.3d at 1206, 1209.

such that specific jurisdiction over Defendants exists." (Opp. at 10).  It also argues that the filing of the Underlying Action was an intentional act aimed at California which caused harm in California. (Id. at 11).

It is unlikely that the August 27 meeting and subsequent failed negotiations would confer personal jurisdiction over Microflo.  These negotiations do not constitute Microflo's purposeful availment of the privilege of conducting activities in the forum, as they occurred at the behest of (non-party) Walgreen.  If it had not been for Walgreen's insistence that Microflo sell to Liberty, it is unlikely that the negotiations would have occurred at all.  See Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 271 (9th Cir. 1995) (declining to find purposeful availment when the only contacts with the forum state were made at the direction of another entity).

However, Microflo's filing and prosecution of the Underlying Action confers jurisdiction. The Ninth Circuit's en banc decision in Yahoo! establishes that Microflo's actions meet the requirements of the Calder effects test.  In that case, Yahoo! filed an action in a California federal court against two French entities seeking a declaration that two interim orders procured by the defendants from a French court were "unrecognizable and unenforceable."  Yahoo!, 433 F.3d at 1201.  One of the entities had sent Yahoo! a cease and desist letter warning that Yahoo!'s practice of presenting Nazi symbols or objects for auction violated French law.  Id. at 1202.  Five days later, both of the French entities filed suit against Yahoo! in French court.  Id.  Thereafter, the French court issued interim orders requiring Yahoo! and Yahoo! France to disable access to the Nazi artifact auction service from French territory, among other remedial measures, such as fines for noncompliance.  Id. at 1202-04.  In the declaratory judgment federal court action, the French entities contested the California court's personal jurisdiction over them.  Id. at 1204.  The en banc court held

that California had specific personal jurisdiction over the French entities. The court stated that the first two requirements of the <u>Calder</u> effects test–(1) an intentional act (2) expressly aimed at the forum state–were "obvious[ly] . . . satisfied" because the French entities "intentionally filed suit in the French court" and the suit sought "orders directing Yahoo! to perform significant acts in California," including payment of financial penalties, the impact of which "would be felt by Yahoo! at its corporate headquarters in California." <u>Id.</u> at 1209. So it is here. Microflo intentionally filed an action in New York state court. That action was expressly aimed at California, because it sought damages from Liberty, a corporation headquartered in California.

As for the third prong of the <u>Calder</u> effects test–the causation of harm that the defendant knows is likely to be suffered in the forum state–the <u>Yahoo!</u> court indicated that this requirement is satisfied when the intentional act causes harm to an entity that the defendant knows is a California citizen. This prong was "problematic" in <u>Yahoo!</u> because it was not clear that Yahoo! had actually suffered any harm. <u>Id.</u> However, Yahoo! pointed to the possibility that a penalty would be imposed on it by the French court. <u>Id.</u> at 1210. This was sufficient to meet the third requirement. <u>See</u> <u>id.</u> at 1211 (finding personal jurisdiction over the French entities and citing "the impact and potential impact of the French court's orders on Yahoo!"). Here, Liberty has alleged that it suffered actual harm because of the Underlying Action; specifically, damages of over $495,000 in legal fees and other costs. (Notice of Removal, Exh. A at 7). There can be no question that Microflo knew that Liberty was headquartered in California, as Malkin had attended the August 27 meeting in the State. Thus, Liberty has shown that Microflo purposefully directed its activities toward California. <u>See</u> <u>Mitan v. Feeney</u>, 497 F. Supp. 2d 1113, 1121 (C.D. Cal. 2007) (declining to find specific jurisdiction in California over an Arkansas resident because it was unclear that the defendant knew that his

actions were directed at a California resident).

Additionally, in order for a California court to exercise personal jurisdiction over Microflo, it must be shown that "'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen." Id. (citing Terracom v. Valley Nat'l Bank, 49 F.3d 555, 561 (9th Cir. 1995). That requirement is clearly met here. There is no question that this malicious prosecution lawsuit would not have arisen but for Microflo filing and prosecuting the Underlying Action. (See, e.g., Notice of Removal, Exh. A at 5-9 (alleging that Microflo filed the Underlying Action without reasonable basis in fact and caused Liberty harm)).

The burden thus shifts to defendants to make a compelling case that the exercise of jurisdiction would be unreasonable. In making this reasonableness determination, a court should balance the following factors:

> (1) the extent of the defendant's purposeful injection into the forum;
> (2) the defendant's burdens from litigating in the forum;
> (3) the extent of conflict with the sovereignty of the defendant's state;
> (4) the forum state's interest in adjudicating the dispute;
> (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
> (7) the existence of an alternative forum.

Terracom, 49 F.3d at 561. Here, defendants have expressly declined to make such a showing. (See Defendants' Reply Memorandum of Law in Support of Motion to Strike ("Reply") at 2 ("The issue of jurisdiction in California is not going to be addressed here because the outcome is the same either way."). Therefore, plaintiff has demonstrated that personal jurisdiction over Microflo existed

in California.  See, e.g., Amini Innovation Corp. v. JS Imports Inc., 497 F. Supp. 2d 1093, 1108 (C.D. Cal. 2007) (declining to address reasonableness when defendants did not present any argument on the issue).

However, the fact that California had jurisdiction over Microflo does not mean that a California court could thereby exercise jurisdiction over Malkin or Ecotech.  The Supreme Court has cautioned that courts must evaluate the contacts of each defendant separately in determining personal jurisdiciton.  See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary.  Each defendant's contacts with the forum State must be assessed individually." (internal citations omitted)).  Malkin emphasizes that neither he nor Ecotech was a party to the Underlying Action.  (See Malkin Decl. ¶ 31).  Thus, it does not appear that California could exercise specific jurisdiction over Malkin and Ecotech based on their own contacts with the State.  However, if personal jurisdiction in a particular forum has been established over a corporation, that corporation's alter egos will also be subject to personal jurisdiction in the forum if the alter egos act so as to justify disregard of the corporate entity. See Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996); see also Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1393 (9th Cir. 1984) ("Where a corporation is the alter ego of the stockholders so as to justify disregard of the corporate entity, jurisdiction over the corporation will support jurisdiction over the stockholders." (internal quotation marks, italics, and brackets omitted)).

To properly allege an alter ego relationship, Liberty must allege facts that show that the

entities are so unified in interest and ownership that their separate personalities no longer exist and that the failure to disregard their separate identities would result in fraud or injustice. See Harris Rutsky & Co., 328 F.3d at 1134. Liberty alleges that Malkin is the Chief Executive Officer and exclusive stockholder of Microflo and Ecotech. (Notice of Removal, Exh. A at 1). It further alleges that:

> Ecotech functions at the absolute direction of Microflo in conducting [its] business . . . .
> All of the business of Microflo and Ecotech is directed by Malkin from his offices in New York.
> Prices for goods sold by Ecotech and Microflo are all determined by Malkin from his offices in New York.
> The formalities of annual and periodic reports and statements required of Microflo[] and Ecotech are conducted on an after the fact basis by Malkin, if at all.
> The existence of Ecotech is maintained by Malkin and Microflo only to place profits from the sale of developing machine filters in offshore tax havens, such existence and activities being without economic substance but constituting the business of Microflo.
> Microflo functions as the alter-ego of Malkin in that Microflo is used as a corporate pocket book [sic] for Malkin and his individual interests.
> The capitalization of Microflo and Ecotech is established at the sole direction and whim of Malkin.

(Id., Exh. A at 2-3 (numbering omitted)). Plaintiff has sufficiently alleged an alter ego relationship among the three entities such that Microflo's contacts with California can be imputed to Malkin and Ecotech. Thus, the California court had personal jurisdiction over all of the defendants.

-14-

II.    California's Choice of Law Rules Establish that this Malicious Prosecution Action is Governed by the Substantive Law of New York

Answering the personal jurisdiction question is merely the first step in deciding which state's law applies to Liberty's malicious prosecution action.  Because California had personal jurisdiction over the defendants, its choice-of-law rules will determine which state's substantive law applies here. See KL Group v. Case, Kay & Lynch, 829 F.2d 909, 915 (9th Cir. 1987); see also Int'l Bus. Machines Corp. v. Bajorek, 191 F.3d 1033, 1037 (9th Cir. 1999).

California courts "appl[y] the so-called 'governmental interest' analysis as the appropriate general methodology for resolving choice-of-law questions."  McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 83 (2010).  The governmental interest analysis proceeds in three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

Id. at 87-88.

The elements of a malicious prosecution cause of action in California are different than the elements of such a cause of action in New York.  In California, a plaintiff must show "that

[defendant's] underlying action was (1) brought (or continued) without probable cause, (2) initiated with malice, and (3) pursued to a legal termination in [plaintiff's] favor." <u>StaffPro, Inc. v. Elite Show Servs., Inc.</u>, 39 Cal. Rptr. 3d 682, 687 (Cal. App. 2006). New York, however, requires a plaintiff to plead and prove "(1) prosecution of a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) causing special injury." <u>Hudson Valley Marine, Inc. v. Town of Cortlandt</u>, 912 N.Y.S.2d 623, 625-26 (App. Div. 2010); <u>Castro v. East End Plastic, Reconstructive & Hand Surgery, P.C.</u>, 850 N.Y.S.2d 483, 485 (App. Div. 2008); <u>see also</u> <u>Engel v. CBS, Inc.</u>, 93 N.Y.2d 195, 201-04 (1999) (discussing special injury requirement for an action alleging malicious prosecution of a contract and copyright infringement action). Because New York requires an allegation of special injury–that is, "some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit," <u>Engel</u>, 93 N.Y.2d at 205–and California does not, the relevant law of the two jurisdictions is different.

Second, there is a true conflict here. Defendants are two citizens of New York and an alleged alter ego of a citizen of New York. New York's malicious prosecution law requires proof of special damages as a "buffer to insure against retaliatory malicious prosecution claims and unending litigation." <u>Id.</u> at 205. Thus, New York's law operates to protect malicious prosecution defendants from retaliation and to protect both litigants and New York courts from "interminably prolonged litigation." <u>Id.</u> at 203. New York therefore has an interest in applying its own law to protect defendants here. Plaintiff is a California citizen. California's malicious prosecution law does not require an allegation of special damages, so it is easier for plaintiffs to prove that they have been maliciously prosecuted. This reflects California's interest in allowing its citizens to redress that

wrong.  Because California has an interest in having its laws applied to protect the rights of Liberty and New York has an interest in protecting the rights of Microflo, Malkin, and Ecotech, there is a true conflict.  See KL Group, 829 F.2d at 916 ("In the present case, California has an interest in having its laws applied to protect the rights of its citizens . . . . Hawaii has a similar interest in seeing that the rights of its citizens . . . are protected.  Thus, there is a 'true conflict,' and we proceed to the third step . . . .").

At the third step–the comparative impairment analysis–the Court must "carefully evaluate and compare the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 96-97 (2010) (internal quotation marks and brackets omitted).  In doing so, the task is not to judge which rule is "better or worthier . . . , but rather to decide–in light of the legal question at issue and the relevant state interests at stake–which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." Id. at 97.

As noted above, the Underlying Action was brought by a New York corporation in a New York court against a California corporation, among other defendants.  Also as noted, California has an interest in protecting its citizens from malicious prosecution, even when the only damage they suffer is the costs of litigating the underlying lawsuit.  However, the Underlying Action ended in a stipulation of discontinuance that required each party to bear its own costs.  (See Sabourin Decl., Exh. D).  It is not clear what interest California has in allowing a California corporation to be compensated for litigation costs where that corporation already agreed to bear on its own.  More importantly, however,

California choice-of-law cases . . . continue to recognize that a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders, and in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future.

Id. at 97-98 (internal quotation marks omitted).  Here, Microflo, a New York commercial entity, performed the relevant action–filing the Underlying Action–in a New York court.  Microflo had a right to rely on New York's limitation of liabilities.  California's rules thus establish that New York law should apply to this action.

Indeed, this principle was recognized by the Ninth Circuit in Engel v. CBS Inc., 981 F.2d 1076 (9th Cir. 1993).[4]  In that case, the plaintiff filed an action in the U.S. District Court for the Southern District of New York for breach of contract, copyright infringement, and injunctive relief. Id. at 1078-79.  One of the defendants then filed an action for malicious prosecution in the U.S. District Court for the Central District of California.  Id. at 1079.  The contract and copyright infringement action was resolved in the defendants' favor.  Id.  The Ninth Circuit addressed whether California or New York law should govern the malicious prosecution action.  While noting California's interest in protecting its citizens from malicious prosecution, the court stated, "In a case like this . . . , where another state's litigation process has allegedly been perverted, California's interest is far less than if the litigation process in California were subject to misuse." Id. at 1081.

On the other hand, New York law seeks to protect its citizens from retaliatory malicious

_____

[4]This case is the precursor to the New York Court of Appeals case Engel v. CBS, Inc., 93 N.Y.2d 195 (1999).  See Engel, 93 N.Y.2d at 198-200.

prosecution lawsuits and protect litigants and courts in the state from "unending litigation." New York's high court has recently reaffirmed that interest. <u>See</u> <u>Engel</u>, 93 N.Y.2d at 204 ("No mere ancient formalism, the concept of added grievance ensures that plaintiffs remain relatively free from the threat of retaliatory lawsuits in bringing their good faith claims."); <u>see also</u> <u>Offshore Rental Co. v. Continental Oil Co.</u>, 22 Cal. 3d 157, 169 (1978) (taking into account the recency of a state court's pronouncement on the law at issue in the comparative impairment analysis). Moreover, this case, like the Underlying Action, is being litigated in a court in New York. As the Ninth Circuit held, New York's "interest in having its malicious prosecution standards applied to cases being litigated within its boundaries" overrides California's "general interest in protecting its citizens, and in allowing recovery for legal claims cognizable under California law." <u>Engel</u>, 981 F.2d at 1082. Therefore, New York substantive law applies to plaintiff's malicious prosecution claim.

III.    <u>Because New York Law Governs this Action, Defendants' Special Motion to Strike Brought Under California Law Must be Denied</u>

Defendants have succeeded in their argument that New York substantive law applies to this case. As it applies to this Motion to Strike, however, it is unavailing.

California Code of Civil Procedure § 425.16–the anti-SLAPP statute under which this Motion to Strike is brought–is California substantive law. <u>See</u> <u>Batzel v. Smith</u>, 333 F.3d 1018, 1025-26 (9th Cir. 2003) ("Because California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as well."). The Ninth Circuit has held that anti-SLAPP motions may be maintained in diversity cases where California provides the law of decision. <u>See</u> <u>id.</u>; <u>see also</u> <u>U.S. ex rel. Newsham v. Lockheed Missiles</u>

& Space Co., 190 F.3d 963, 971-73 (9th Cir. 1999) (applying certain subsections of California's anti-SLAPP statute to state law counterclaims). However, those decisions are not relevant here because New York, not California, provides the law of decision.

Defendants assert that "California law applies to the anti-SLAPP motion." (Reply at 1). Their only support for this proclamation is that the "action was brought in California state court and the motion was timely filed in Federal District Court in California." (Reply at 2). But, the case has since been transferred to New York and this (New York) Court has determined that California's choice-of-law principles mandate the application of New York law. Defendants have not explained why the mere fact that an anti-SLAPP motion was filed prior to the Court's evaluation of the choice-of-law question should mandate the application of California law to part of this action and New York law to the rest of it. If the argument is that the anti-SLAPP motion somehow conceptually precedes to the choice-of-law decision (that is, that the anti-SLAPP motion should be decided as if the choice-of-law question had not been answered), the Court is equally flummoxed as to the precedential or doctrinal authority that supports this view.

Of course, New York has its own anti-SLAPP statute, codified at New York Civil Rights Law §§ 70-a and 76-a. But even if there were authority allowing the Court to convert an anti-SLAPP motion brought under California Code of Civil Procedure § 425.16 to one brought under New York law, this Motion to Strike would fail. New York's own anti-SLAPP provision does not apply in a case like this one. In New York, a strategic lawsuit against public participation is defined as "an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." N.Y. Civ. Rights Law § 76-a(1)(a). A

-20-

"public applicant or permittee," in turn, is "any person who has applied for or obtained a permit,

zoning change, lease, license, certificate or other entitlement for use or permission to act from any

government body, or any person with an interest, connection or affiliation with such person that is

materially related to such application or permission." N.Y. Civ. Rights Law § 76-a(1)(b). The law

was passed to address "'a rising concern about the use of civil litigation, primarily defamation suits,

to intimidate or silence those who speak out at public meetings against proposed land use

development and other activities requiring approval of public boards.'" Chandok v. Klessig, 632

F.3d 803, 818 (2d Cir. 2011) (quoting 600 W. 115th St. Corp. v. Von Gutfield, 80N.Y.2d 130, 137

n.1 (1992)). Liberty is not a "public applicant or permittee" and this action has nothing to do with

comments on or opposition to an application or permission from a public board. Moreover, New

York's anti-SLAPP statute does not permit a "special motion to strike," but rather merely allows a

person to bring "an action, claim, cross claim or counterclaim to recover damages, including costs

and attorney's fees." N.Y. Civ. Rights Law § 70-a(1). In any case, defendants have brought a

motion derived from California law in an action governed by New York law. The Motion to Strike

is without merit in this action.[5]

---

[5]Because of the resolution of this issue, it is not necessary to address the merits of
plaintiff's action for malicious prosecution in deciding this Motion to Strike. However, as was
made clear at the hearing on this motion, see Tr. 3, the Court is troubled by the fact that, by filing
an action that seeks to recover the attorneys' fees and costs expended in the Underlying Action,
plaintiff appears to be flouting the stipulation of discontinuance in that prior action–"so ordered"
by the court–which dismissed the action with prejudice and mandated that each party bear its
own costs. (See Sabourin Decl., Exh. D). "A stipulation is generally binding on parties that
have legal capacity to negotiate, do in fact freely negotiate their agreement and either reduce their
stipulation to a properly subscribed writing or enter the stipulation orally on the record in open
court." Katel Ltd. Liab. Co. v. AT&T Corp., 607 F.3d 60, 65 (2d Cir. 2010) (internal quotation
marks and alteration omitted). Moreover, "a stipulation of discontinuance with prejudice has the
same effect as a final judgment on the merits for res judicata purposes." Allianz Ins. Co. v.
Lerner, 296 F. Supp. 2d 417, 421 (E.D.N.Y. 2003) (Wexler, J.) (italics added). Thus, the

For the foregoing reasons, defendants' Special Motion to Strike Complaint for Malicious Prosecution per Cal. CCP 425.16 and Request for Sanctions in an Amount to be Determined (ECF No. 34) is DENIED.


**SO ORDERED:**

Dated: Central Islip, New York
     October 26, 2011


                                    /s/ E. Thomas Boyle
                                    E. THOMAS BOYLE
                                    United States Magistrate Judge

---

stipulation of discontinuance precludes plaintiff from raising issues that were actually decided, or could have been raised, in the Underlying Action. See NBN Broadcasting, Inc. v. Sheridan Broadcasting Networks, Inc., 105 F.3d 72, 78 (2d Cir. 1997) (emphasizing that a discontinuance with prejudice "precludes the parties or their privies" from litigating issues that were or could have been decided in the prior action). The stipulation in the Underlying Action unambiguously requires that each party bear its own costs; thus, that issue has been decided. (See Sabourin Decl., Exh. D ("[T]he action herein is hereby dismissed with prejudice and with each party bearing its (their) own costs.")). Plaintiff's attempt to circumvent that stipulation, which is not only the agreement of the parties, but also an order of the court, offends the principle of finality that underlies a dismissal with prejudice and needlessly prolongs the parties' dispute.