UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

LIBERTY SYNERGISTICS, INC., a California
Corporation,

                       Plaintiff,

           v.

MICROFLO LTD., EDWARD MALKIN,
ECOTECH LIMITED, a Cayman Islands Company,
and DOES 1 through 20, inclusive,

                       Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
11-CV-523 (MKB)

MARGO K. BRODIE, United States District Judge:

     Plaintiff Liberty Synergistics, Inc. ("Liberty") commenced the above-captioned action in

California state court against Defendants Microflo Ltd. ("Microflo"), Edward Malkin, Echotech

Limited and certain unknown individuals, Does 1 through 20, alleging malicious prosecution of a

prior litigation brought by Microflo against Liberty.  (Docket Entry No. 1.)  The action was

removed to the Central District of California and later transferred to the Eastern District of New

York by stipulation.  (Docket Entry No. 15.)  On August 16, 2011, Defendants filed an Amended

Motion to Strike the Complaint ("motion to strike") pursuant to California Code of Civil

Procedure § 425.16, otherwise known as California's "anti-SLAPP" statute.  (Docket Entry No.

34.)  Defendants seek (1) to dismiss this action as a strategic lawsuit against public participation,

or "SLAPP," and (2) an award of sanctions against Plaintiff.  (*Id*.)  By Amended Report and

Recommendations ("R&R") dated December 17, 2013, Magistrate Judge William D. Wall

recommended that Defendants' motion to strike the Complaint be granted, and that the action be

dismissed pursuant to California's anti-SLAPP statute.  (R&R, Docket Entry No. 134.)  Judge

Wall further recommended that should the Court adopt the R&R, the parties "be given an opportunity to brief the application for sanctions." (*Id*. at 1.) Plaintiff timely filed objections to the R&R, (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 136), and Defendants filed a response to Plaintiff's objections, (Def. Mem. in Opp. ("Def. Resp."), Docket Entry No. 137). For the reasons set forth below, the Court adopts in part, and rejects in part, Judge Wall's R&R. The Court adopts Judge Wall's R&R as to the determination that the issue of which substantive law applies to Plaintiff's malicious prosecution claim is the law of the case, but declines to adopt the portion of Judge Wall's R&R which found that Plaintiff does not have a reasonable probability of prevailing on its malicious prosecution claim. The Court also denies Defendants' motion for sanctions.

## I. Background

### a. The Underlying Litigation

On June 24, 2008, Microflo commenced an action in the Supreme Court of the State of New York, County of Nassau ("New York Supreme Court"), against Dan Foy, Julie Swink, Ronald N. Green, Ravi Krish, Rick Cole, Gary Green, Michael Tumis (a/k/a Mike Tumis), Walgreen Company ("Walgreen") and Plaintiff, alleging fraud, unfair trade practices, unjust enrichment, breach of contract and breach of duty of good faith and fair dealing, tortious interference with prospective economic advantage, and violations of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961 *et seq*. ("RICO") (the "Underlying Litigation"). Complaint, *Microflo v. Liberty Bearing Corp.*, No. 08-011622 (N.Y. Sup. Ct. June 24, 2008).

According to the Underlying Litigation, Microflo sells "re-usable filters or non-disposable filters used in the processing of photographs" in one-hour photo labs.[1] *Id.* ¶ 54. Liberty's business "involve[d] the distribution and supply of chemistry, disposable filters and supplies to one hour photo labs." *Id.* ¶ 59. In March 2004, Microflo contacted Walgreen in an effort to have Walgreen sell Microflo's filters. *Id.* ¶ 62. In April 2004, Michael Tumis, an employee of Walgreen, asked Microflo to provide samples of the filters to Walgreen for testing, which Microflo agreed to provide. *Id.* ¶ 64–65. After approximately sixty to ninety days of testing, Tumis advised Edward Malkin, Microflo's sole shareholder, that the "[f]ilters were acceptable, the price was okay and Walgreen would go ahead but that the [f]ilters would need to go through Liberty." *Id.* ¶ 68.

At an August 23, 2004 meeting, Tumis and Malkin agreed to a price of $16.00 per filter, however, Tumis further instructed Malkin that the filters were to be sold by Microflo to Liberty, and then sold by Liberty to Walgreen. *Id.* ¶ 74. On or about August 27, 2004, Malkin met with representatives of Liberty regarding "what Liberty would need to do in connection with the roll out or distribution of the [f]ilters" to Walgreen. *Id.* ¶ 81. At the August 27, 2004 meeting, believing that Walgreen was proceeding with the purchase of Microflo's filters, Malkin answered inquiries from Liberty regarding the construction and composition of the filters, "thereby divulging to Liberty confidential trade secret information." *Id.* ¶¶ 83–84. Liberty representatives also asked to be paid one-third of the gross receipts from the sales of the filters to Walgreen. *Id.* ¶ 87. Microflo objected to the price and by letter dated September 20, 2004,

---

[1] The Court relies on the facts as stated in the complaint filed in the Underlying Litigation. Complaint, *Microflo v. Liberty Bearing Corp.*, No. 08-011622 (Sup. Ct. June 24, 2008).

advised Walgreen that it was not interested in proceeding with the sale of the filters. *Id.* ¶¶ 89–92.

In October 2004, Tumis, on behalf of Walgreen, advised Malkin that Walgreen was interested in doing business directly with Microflo. *Id.* ¶ 94. In December 2004, Liberty expressed a willingness to conduct the sale and distribution of the filters between Microflo and Walgreen at a "reasonable price," ultimately offering to conduct the sale and distribution at a 10% gross margin. *Id.* ¶ 102. In January 2005, Liberty and Microflo continued to discuss the sale. *Id.* ¶¶ 106–110. By email and a letter dated February 17, 2005, Liberty advised Microflo that while Liberty "had 'not been idle on the matter of the contemplated arrangement between Liberty and Walgreens concerning the Microflo filters' . . . '[it] had been unable to conclude an arrangement with Walgreens to supply Microflo Filters to Walgreens." *Id.* ¶ 115. The letter further stated that Liberty would thereby not be entering into a contract with Microflo for the purchase of the filters. *Id.* Microflo then contacted Walgreen and offered to provide the filters to Walgreen directly. *Id.* ¶ 116. Tumis informed Microflo that it had not yet decided on a final vendor for the filters and that the vendor "may or may not turn out to be Microflo." *Id.* ¶ 117. In May 2006, Malkin learned that Liberty offered to sell Wal-Mart, "Microflo's largest single customer of many years standing," washable, reusable filters for its photo processing machines. *Id.* ¶ 120.

Microflo asserted in the Underlying Litigation that, on information and belief, Liberty never intended to enter into an agreement for the purchase of Microflo's filters and that it used the samples Microflo provided to Walgreen, to "reverse engineer the [f]ilters so that Liberty could design and manufacture its own [f]ilters" to compete with Microflo. *Id.* ¶¶ 121, 123. In

the Underlying Litigation, Microflo alleged among other causes of action, fraud, civil RICO violations and unfair trade practices.

After the Underlying Litigation was filed in the New York Supreme Court, it was subsequently removed to the Eastern District of New York. *See* Notice of Removal, *Microflo, Ltd. v. Liberty Bearing Corp.*, No. 08-CV-3907, Docket Entry No. 1.[2] On March 19, 2010, Walgreen and Tumis (collectively the "Walgreens Defendants") moved to dismiss the Complaint in the Underlying Litigation for failure to state a claim. *See* Underlying Litigation, Docket Entry No. 80. On March 24, 2010, Liberty and the Liberty employee defendants (collectively the "Liberty Defendants") moved to dismiss the Underlying Litigation on jurisdictional grounds, and alternatively requested a change of venue. *Id*., Docket Entry No. 86. On May 11, 2010, the Honorable Leonard D. Wexler partially granted the Walgreens Defendants' motion to dismiss, dismissing the civil RICO claim with prejudice. *Id*., Order dated May 11, 2010. The Liberty Defendants' motion to dismiss was denied. *Id*. Pursuant to a stipulation of dismissal dated July 1, 2010, filed by Plaintiff and signed by the parties, the Underlying Litigation was dismissed with prejudice pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.

### b. History of the instant action

On September 17, 2010, Liberty commenced the above-captioned action in California state court alleging malicious prosecution against Defendants for bringing the Underlying Litigation. (Compl., annexed to Notice of Removal, Docket Entry No. 1, as Ex. A.) The action was removed to the Central District of California by the Defendants on the basis of diversity

---

[2] Documents filed in the Underlying Litigation can be found at docket number 08-CV-3907. The Court will refer to all documents filed in the Underlying Litigation with the notation, "Underlying Litigation," and reference the docket entry number for the referenced document. The Court will refer to the date of order when referencing orders or decisions in the Underlying Litigation without docket entry numbers.

jurisdiction.  (Docket Entry No. 1.)  The parties subsequently stipulated to transfer the case to the Eastern District of New York as the appropriate venue pursuant to 28 U.S.C. § 1404(a).  (Docket Entry No. 15.)

Plaintiff alleges that Defendants prosecuted the Underlying Litigation without a "reasonable basis in fact or any probable cause."[3]  (Am. Compl. ¶ 21, Docket Entry No. 80.)  According to Plaintiff, after its initial meeting with Malkin to discuss the sale of Microflo's reusable filters, Malkin "maintained that [Microflo] wanted nothing to do with Liberty, wanted to do no business with Walgreens through Liberty and refused to engage in negotiations . . . to sell Liberty filters for sale to Walgreens."  (*Id.* ¶ 13.)  The parties were unsuccessful in reaching a contract for the sale of the filters despite efforts to negotiate.  (*Id.* ¶ 14.)  It was only "[a]fter a careful review to determine the extent, if any, of the intellectual property rights of [Microflo]," that Liberty developed its own filters and sold them to Walgreens.  (*Id.* ¶ 15.)  Liberty asserts that its filters "are distinct from Microflo's filters, and have never been sold or offered for sale to any of Microflo's filter customers" and Liberty does not "sell all of the same filters for all models of photographic development machines that Microflo sells."  (*Id.*)  Liberty claims that Microflo filed the Underlying Litigation to "inflict financial damage on [Liberty], to interfere with [its] legitimate business, and to attempt to cause monopolization and price fixing in the business of reusable filters [as well as] to suppress legitimate business competition," among other inappropriate motives.  (*Id.* ¶ 20.)

---

[3]  The Underlying Litigation was brought by Defendant Microflo.  Plaintiff alleges in the instant action that the remaining Defendants are also liable for malicious prosecution as alter egos of Microflo.  (Am. Compl. ¶¶ 6–7.)

### c. Defendants' motion to strike

On August 16, 2011, Defendants filed a Special Motion to Strike the Complaint under California's anti-SLAPP statute, seeking dismissal and sanctions. (Docket Entry No. 42.) According to Defendants, they had a reasonable basis to commence the Underlying Litigation because Liberty had "engaged in a series of acts and representations that led Microflo to conclude that Liberty had not acted in good faith and fairly, [and] engaged in unfair trade practices," among other specified wrongful conduct. (*Id*. at 2.) Defendants also claimed that the prosecution of the Underlying Litigation was "protected activity" under the statute, and Plaintiff could not establish a reasonable probability of prevailing on its malicious prosecution claim. (*Id*. at 15–16, 18–23.) Plaintiff argued that it met its burden under the anti-SLAPP statute by showing a reasonable probability of success.[4] (Docket Entry No. 35.)

The Honorable Sandra J. Feuerstein referred Defendants' motion to Magistrate Judge E. Thomas Boyle for a report and recommendation.[5] (Order dated September 14, 2011.)

### d. Judge Boyle's R&R and adoption by Judge Feuerstein

By Report and Recommendation dated October 18, 2011 ("October 2011 R&R"), Judge Boyle recommended that Judge Feuerstein deny Defendants' motion to strike based on New

---

[4] The parties disagree about the choice of law that should be applied to Plaintiff's malicious prosecution claim. Defendants argue that New York substantive law should apply while Plaintiff argues that California substantive law should apply to its malicious prosecution claim. (*Compare* Pl. Mem. of Law in Opp. to Mot. to Strike ("Pl. Opp.") at 8–14, Docket Entry No. 35 *with* Def. Reply Mem. of Law in Support of Mot. to Strike ("Def. Reply") at 4–8, Docket Entry No. 36.) As discussed *infra* Part II.c.i, Judge Feuerstein's determination that New York law applies to Plaintiff's malicious prosecution claim is the law of the case, and should be adhered to unless there has been "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Thompson v. Choinski*, 374 F. App'x 222, 223 (2d. Cir. 2010) (citing *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009)).

[5] This case was reassigned to the undersigned on March 23, 2012.

York law.[6]  (October 2011 R&R, Docket Entry No. 45.)  Judge Boyle concluded that

California's anti-SLAPP statute, as substantive law, was inapplicable to this action because the

action was governed by New York substantive law.  (*Id*. at 19–20.)  Judge Boyle also concluded

that California's choice of law rules establish that New York law applies to Plaintiff's malicious

prosecution claim.  (*Id*. at 15–19.)  The parties objected to Judge Boyle's recommendation.[7]

(Docket Entry Nos. 47–57.)  Upon *de novo* review, Judge Feuerstein adopted the portion of

Judge Boyle's R&R supporting the denial of Defendants' motion to strike, ("Feurstein

decision").  (Order dated Dec. 1, 2011, Docket Entry No. 60.)

### e.  Appeal of Judge Feuerstein's Decision

Defendants appealed Judge Feuerstein's decision to the Second Circuit.  Defendants

argued that Judges Feuerstein and Boyle should have applied California's anti-SLAPP statute.

(Brief and Special Appendix for Defendants-Appellants, *Liberty Synergistics v. Microflo Ltd.*,

No. 12-CV-108.)  The Second Circuit agreed and determined that, under the governing choice-

---

[6]  Though Judge Boyle's October 26, 2011 decision was labeled as a "Memorandum Opinion and Order," Judge Feuerstein clarified in her December 1, 2011 order that because Defendants' motion to strike the Complaint was dispositive and the parties did not consent to referral of the issue to the Magistrate Judge, Judge Boyle's "Memorandum Opinion and Order" was deemed to be a report and recommendation subject to review under 28 U.S.C. § 636(b)(1)(B).  (Order dated December 1, 2011 at 1 n.1, Docket Entry No. 60.)

[7]  The parties objected to Judge Boyle's R&R on different grounds.  Plaintiff moved to set aside portions of Judge Boyle's R&R.  (Docket Entry No. 47.)  Plaintiff argued that contested facts were improperly decided in favor of Defendants, and New York substantive law should not be applied to Plaintiff's malicious prosecution claim.  (*Id*. at 5–8.)  Plaintiff further objected to the "inference" suggested in *dicta* in Judge Boyle's R&R that the doctrine of *res judicata* could apply to Plaintiff's malicious prosecution claim.  (*Id*. at 8.)  Defendants objected on the ground that Judge Boyle incorrectly found that New York law applied to Plaintiff's malicious prosecution claim, and thus, according to Judge Boyle, California's anti-SLAPP law was not applicable.  (Docket Entry No. 48.)

of-law principles, California's anti-SLAPP statute *did* apply.[8]  *See Liberty Synergistics v. Microflo Ltd.*, 718 F.3d 138, 154–56 (2d Cir. 2013).

The Second Circuit explained that:

> [T]he Rules of Decision Act, 28 U.S.C. § 1652, . . . provides that federal courts exercising diversity jurisdiction over a state-law claim must consider two conceptually distinct issues.  First, a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court . . . . Second, after using state conflict-of-laws principles to ascertain the rules of decision that would apply in the state courts of the federal forum, federal courts apply those state rules of decision that are "substantive" under [the] *Erie* [doctrine] and are consistent with federal law.

*Id.* at 151–52 (internal citations omitted).  Considering the first issue, the Second Circuit noted that Plaintiff originally filed suit in California before transferring the case to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a).  *Id.* at 153.  "[I]n such circumstances, the governing law 'does not change following a transfer of venue under § 1404(a).'"  *Id.* (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1989)).  Thus, the Second Circuit held that "the federal court in New York must pretend, for the purpose of determining the applicable state rules of decision, that it is sitting in California."  *Id.* at 154.

As to the determination of "[w]hether a particular state rule of decision is 'substantive' under [the] *Erie* [doctrine]," such determination "is a question of *federal* law," *id.* at 152 (emphasis in original), and depends on:

> [W]hether application of the [State's] rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against

---

[8]  The Second Circuit determined that Judge Feuerstein's decision denying Defendants' motion to strike was a collateral order suitable for interlocutory appeal.  *Liberty Synergistics v. Microflo Ltd.*, 718 F.3d 138, 143 (2d Cir. 2013).

> citizens of the forum State, or whether application of the rule
> would have so important an effect upon the fortunes of one or both
> of the litigants that failure to enforce it would be likely to cause a
> plaintiff to choose the federal court.

*Id*. at 152 (quoting *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 428 n.8 (1996) (second

alteration in original)). The Second Circuit noted that it is "immaterial" whether the state rule of

decision "is labelled by *state law* as 'procedural,' 'substantive,' both, or neither." *Id.* Rather, "if

state conflict of law principles call for a rule of decision (1) that would apply to the suit if it were

brought in state court, (2) that is 'substantive' within the meaning [of] *Erie*, and (3) that is not

displaced by a valid federal law or rule governing the same issue, then the Rules of Decision

Act . . . requires the federal court sitting in diversity to apply the state rule . . . ." *Id.* at 153.

   The Second Circuit determined that it "h[ad] no reason to doubt that a California state

court would apply California's anti-SLAPP rule as a matter of its own procedural rules . . . ."

(*Id*. at 154.) The Court noted that the anti-SLAPP rule is in California's Code of Civil

Procedure, has been described by courts in California as a "procedural remedy" and the "text of

the rule is not limited to causes of action that arise under California law." *Id.* The Court further

noted that California courts have also "repeatedly held, as a matter of *state* law, that California's

anti-SLAPP rule is 'procedural' in nature and therefore applies in California courts regardless of

which source of law governs a plaintiff's claim." *Id.* Accordingly, the Second Circuit held that

since "California's anti-SLAPP rule would apply to this suit if the claim were proceeding in

California state court . . . . the District Court erred with respect to this issue." (*Id*. at 156.) The

Second Circuit vacated Judge Feuerstein's decision and remanded the case to the Court for

further consideration of the motion to strike. (*Id*. at 156.)

   On June 14, 2013, the Court referred Defendants' motion to strike to Judge Boyle for a

new report and recommendation consistent with the Second Circuit's decision. (Order referring

motion dated June 14, 2013.)  Magistrate Judge William D. Wall replaced Judge Boyle on this
matter on July 15, 2013.

### f.   Judge Wall's Report and Recommendation

In his R&R, Judge Wall recommended that the Court dismiss this action pursuant to
California's anti-SLAPP statute.  (R&R, Docket Entry No. 134.)  Judge Wall concluded that
Plaintiff could not meet its *prima facie* burden under the anti-SLAPP statute to show a
"reasonable probability" that it would prevail in its malicious prosecution claim against
Defendants.  In particular, Judge Wall found that Plaintiff could not establish a favorable
termination in the Underlying Litigation, a required element to prove a malicious prosecution
claim under New York law.  Judge Wall determined that the Underlying Litigation ended when
the parties filed a stipulation of voluntary dismissal pursuant to Rule 41(a)(1)(ii), and concluded
that the termination of the Underlying Litigation under those circumstances — specifically, by
such an agreement between the parties and without an adjudication on the merits — did not
amount to a favorable termination under New York law.[9]  (*Id*. at 13–15.)

### g.   Plaintiff's objections to Judge Wall's R&R

On January 7, 2014, Plaintiff filed objections to Judge Wall's R&R, arguing that the
R&R ignores certain facts supporting a finding of favorable termination.  (Pl. Obj. 5–8.)
Plaintiff also contends that Judge Wall "refus[ed] to reconsider Liberty's request that the Court

---

[9]  In a "supplemental" brief filed in opposition to Defendants' renewed motion to strike,
Plaintiff reiterated its position that California's substantive law should apply to the malicious
prosecution claim, not New York's substantive law.  (*See* R&R 10.)  Judge Wall found that this
issue was not before him and noted that Judge Boyle analyzed this issue in detail in his prior
R&R, that Judge Feuerstein agreed with Judge Boyle's ruling, and that the Second Circuit
specifically avoided considering the issue.  (*Id*. at 10–11.)  As discussed *supra* in Part II.c.i, the
Court agrees with the determination by Judge Wall that Judge Feuerstein's prior decision as to
this issue is the law of the case.

re-examine whether California or New York state law should apply" to the malicious prosecution claim.[10]  (*Id.* at 2, 9–10.)  Plaintiff requests that the Court review Judge Wall's R&R *de novo*. (*Id.* at 10.)

## II. Discussion

### a. Standard of Review

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review.  28 U.S.C. § 636(b)(1)(C); *see also Larocco v. Jackson*, No. 10-CV-1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  28 U.S.C. § 636(b)(1)(C); *see also Larocco*, 2010 WL 5068006, at *2.  The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments.  *See Rahman v. Fischer*, No. 10-CV-1496, 2014 WL 688980, at *1 (N.D.N.Y. Feb. 20, 2014) ("If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error." (citations omitted));

---

[10]  Plaintiff raises three additional objections.  First, Plaintiff contends that the R&R "incorrectly takes as true that Liberty approached Microflo's customer Wal-Mart seeking to sell it filters."  (Pl. Obj. 9.)  Second, Plaintiff "objects to the pending motion, memoranda in support of said motion, and reply, being referred to as 'supplemental papers '" by Judge Wall.  (*Id.*) Plaintiff further objects to "the manner in which [Judge Wall applied] California law . . .  to the analysis of the Anti-SLAPP motion," in particular, Plaintiff claims that Judge Wall did not identify what evidence submitted by Defendants defeats Plaintiff's *prima facie* case as a matter of law.  (*Id.* at 2.)

*Time Square Foods Imports LLC v. Philbin*, No. 12-CV-9101, 2014 WL 521242, at *2 (S.D.N.Y. Feb. 10, 2014) (clearly erroneous standard applies when party reiterates arguments made to the magistrate judge); *see also DePrima v. City of New York Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### b. California's anti-SLAPP statute

California's anti-SLAPP statute was "designed to allow courts to promptly expose and dismiss meritless and harassing claims seeking to chill protected expression." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citing *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005)). The statute generally provides for "pre-trial dismissal of 'SLAPPs': 'Strategic Lawsuits against Public Participation . . . .'" which are "lawsuits that 'masquerade as ordinary lawsuits' but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Batzel v. Smith*, 333 F.3d 1018, 1023 (9th Cir. 2003) (citing *Wilcox v. Superior Court*, 33 Cal. Rptr. 2d 446, 450 (1994), *overruled on other grounds*, *Equilon Enter. v. Consumer Cause, Inc.*, 124 Cal. Rptr. 2d 507, 519 (2002)) (internal citation omitted). California's anti-SLAPP statute provides in pertinent part that:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that a plaintiff will prevail on the claim.

Cal C.C.P. § 425.16. "Acts in furtherance of the right of petition include 'any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body.'" *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014) (alteration in

13

original) (quoting Cal.C.C.P § 425.16(e)(2)). An action for malicious prosecution may be challenged under California's anti-SLAPP law. *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 742 (Cal. 2003) ("The anti-SLAPP statute is not ambiguous with respect to whether its protection of 'any act' furthering protected rights encompasses suing for malicious prosecution.").

"In order to prevail on an anti-SLAPP motion, the defendant is required to make a *prima facie* showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech . . . ."[11] *Batzel*, 333 F.3d at 1024. After the defendant has made a *prima facie* showing, "[t]he burden then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail on his or her . . . claim." *Id*. In order to meet this burden, "[t]he plaintiff must demonstrate that the 'complaint is legally sufficient and supported by a *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is . . . credited.'" *Id*. (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)).

In assessing an anti-SLAPP motion under California law, a court must consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based," but may not "weigh credibility [nor] compare the weight of the evidence . . . . [r]ather, [the court] accept[s] as true the evidence favorable to the plaintiff . . . and evaluate[s] the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a

---

[11] The parties do not appear to dispute that Defendants have met their *prima facie* burden by alleging that the Underlying Litigation constitutes an act "in furtherance of . . . free speech" under the statute. Indeed, Section 425.16(e)(1) of the California Code of Procedure defines an "act in furtherance of a person's right of petition or free speech . . . in connection with a public issue" to include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding," and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. C.C.P. § 425.16(e)(1)–(2).

matter of law." *Roger Cleveland Golf Co., Inc. v. Krane & Smith APC*, 170 Cal. Rptr. 3d 431, 449 (Ct. App. 2014) (quoting *Nygard, Inc. v. Uusi-Kerttula*, 72 Cal. Rptr. 3d 210, 215 (Ct. App. 2008)). A plaintiff is not required to *prove* the merits of a particular claim on an anti-SLAPP motion but must "demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Burrill v. Nair*, 158 Cal. Rptr. 3d 332, 348 (Ct. App. 2013) (quoting *Oasis West Realty, LLC v. Goldman*, 124 Cal Rptr. 3d 256, 262 (2011)). It is not a court's task on a motion to strike "to resolve factual disputes or make credibility determinations." *Freeman v. Schack*, 64 Cal. Rptr. 3d 867, 878 (Ct. App. 2007). If a case survives an anti-SLAPP motion to strike, the statute no longer applies and the matter will proceed to litigation on the merits. *Id.*; *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, No. No. 04-CV-1687, 2004 WL 1737275, at *2 (N.D. Cal. July 28, 2004) ("Once the plaintiff's case has survived the motion, the anti-SLAPP statute no longer applies and the parties proceed to litigate the merits of the action.").

### c. Review of Judge Wall's R&R

The Court agrees with Judge Wall that the question of which substantive law applies to the determination of whether Plaintiff can sustain its malicious prosecution claim against Defendants is not properly before the Court. The Court therefore adopts this portion of the R&R. However, the Court disagrees with Judge Wall's conclusion that, because the stipulation of dismissal filed in the Underlying Litigation was signed by the parties and "agreed to," Plaintiff cannot show a favorable termination of the Underlying Litigation, and therefore fails to meet its burden under California's anti-SLAPP statute. The Court declines to adopt this portion of the R&R.

### i. Application of New York substantive law is the law of the case

Plaintiff argues that the Amended R&R "disregards the choice of law analysis applied by the Second Circuit with regard to the choice of law determination for the malicious prosecution claim." (Pl. Obj. 9.) Plaintiff contends that the Second Circuit's analysis "is instructive" to the "choice of law analysis application to this case's unique posture," and if the Court were to apply the Second Circuit's analysis, "it would yield a different result," than the result previously reached by Judge Feuerstein and Judge Boyle. (*Id*. at 9.) Judge Wall determined that the issue of the substantive law applicable to Plaintiff's malicious prosecution claim was not before the Court on this "renewed motion" to strike. (R&R 10.) Judge Wall explained that Judge Boyle previously considered this issue "in detail," Judge Feuerstein agreed and adopted his ruling, and the Second Circuit "specifically avoided considering the issue" as it was not a collateral order suitable for Defendants' interlocutory appeal. (*Id*. at 11.) Accordingly, Judge Wall determined that the application of New York law to the malicious prosecution claim is the law of the case. (*Id*.) The Court agrees.

"The law of the case doctrine 'commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case,' unless there has been 'an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Thompson v. Choinski*, 374 F. App'x 222, 223 (2d Cir. 2010) (citing *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009)). In the October 2011 R&R, Judge Boyle considered the issue of whether, under California's choice of law rules, New York substantive law or California substantive law governs Plaintiff's malicious prosecution claim and determined that New York substantive law applies. (October 2011 R&R

19.)  Notwithstanding Plaintiff's objection to this choice of law conclusion, Judge Feuerstein accepted it "in its entirety."  (Feuerstein decision 3.)

Moreover, the Second Circuit in *Liberty Synergistics* explicitly did not address whether California or New York substantive law should be applied to the merits of the malicious prosecution claim.  *Liberty Synergistics*, 718 F.3d at 149 ("[W]e are able to review the District Court's order with respect to the anti-SLAPP issue without addressing the District Court's decision that New York law governs the malicious prosecution claim  [because] the question raised in this appeal presents an important issue completely separate from the merits of the action.'" (internal citations and quotation marks omitted)); *see also id*. at 157 ("[T]he District Court erred in its choice-of-law analysis by concluding that California's anti-SLAPP rule could not apply following the forum transfer because New York law governed the plaintiff's cause of action.").  Thus, contrary to Plaintiff's suggestion, the Second Circuit's decision does not represent an intervening change in law and has no bearing on the choice of law determination as to which substantive law applies to Plaintiff's malicious prosecution claim.  Accordingly, the application of New York law to the merits of Plaintiff's claim is the law of the case, and the Court has no basis to disturb this determination.[12]

_____

[12]  Even if the Court were to determine that it could review the choice of law determination, it would reach the same conclusion as Judges Boyle and Feuerstein.  Judge Boyle applied California choice of law rules to reach his conclusion that New York substantive law applies.  (October 2011 R&R 15–19.)  The Second Circuit's opinion in this case confirms that California choice of law rules are the proper rules to be applied.  *Liberty Synergistics*, 718 F.3d at 153 ("[T]he governing law 'does not change following a transfer of venue under § 1404(a) . . . . Here, that means that the federal court in New York must pretend, for the purpose of determining the applicable state rules of decision, that it is sitting in California.").  The distinction between the analyses of Judges Boyle and Feuerstein and the Second Circuit are due in part to the fact that while Judges Boyle and Feuerstein found California's anti-SLAPP law to be substantive law and therefore not applicable, the Second Circuit clarified that a California state court would apply its own anti-SLAPP procedural law "regardless of which source of law governs a Plaintiff's claim."  *Id*. at 154.

### ii.   Viability of Plaintiff's malicious prosecution claim

Judge Wall concluded that Plaintiff could not meet its burden under California's anti-SLAPP law of showing a "reasonable probability" of prevailing in this action because Plaintiff could not show that the Underlying Litigation was terminated in its favor — an element that is necessary to sustain a malicious prosecution claim under New York law.[13]   In support of this conclusion, Judge Wall noted that there appears to be two ways to show favorable termination under New York law: (1) an adjudication on the merits, or (2) an act of withdrawal or abandonment on the part of the party prosecuting the action.  (R&R 14.)  Judge Wall noted that there was no determination on the merits in the Underlying Litigation, and the Underlying Litigation was terminated by a stipulation of dismissal.  (*Id.* at 15.)  Judge Wall then concluded that the stipulation of dismissal did not represent an abandonment as "[b]oth parties agreed to it and signed on" to the stipulation of dismissal and an action terminated by settlement or "agreement by the parties" is not a "favorable termination" for the purposes of a malicious prosecution claim.  (R&R 13–15.)  Thus, Judge Wall determined that Plaintiff could not establish a favorable termination — an "essential element of its cause of action" — and therefore, recommended that the Amended Complaint be dismissed pursuant to California's anti-SLAPP statute.  (*Id.* at 15.)  The Court disagrees with Judge Wall's conclusion that the stipulation of dismissal mandates a finding that Plaintiff cannot show a favorable termination of the Underlying Litigation.

---

[13]   To state a claim under New York law for the malicious prosecution of a civil action, a plaintiff must show "1) the initiation of an action by the defendant against [plaintiff], 2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in failure or, in other words, terminates in favor of the plaintiff" and 5) causing special injury.  *Engel v. CBS*, 145 F.3d 499, 502 (2d Cir. 1998) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996)); *Castro v. East End Plastic, Reconstructive & Hand Surgery, P.C.*, 850 N.Y.S.2d 483, 485 (App. Div. 2008)

#### d. Plaintiff's malicious prosecution claim

To state a claim under New York law for the malicious prosecution of a civil action, a plaintiff must show "1) the initiation of an action by the defendant against [him], 2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in failure or, in other words, terminates in favor of the plaintiff" and 5) causes special injury. *Engel v. CBS*, 145 F.3d 499, 502 (2d. Cir. 1998) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d. Cir. 1996) (internal quotation marks omitted)); *Castro v. East End Plastic, Reconstructive & Hand Surgery, P.C.*, 850 N.Y.S.2d 483, 485 (App. Div. 2008). The Court first reviews the stipulation of dismissal in the Underlying Litigation, and then examines each of the elements of a malicious prosecution claim to determine whether Plaintiff has a reasonable probability of prevailing on its claim.

#### i. The stipulation of dismissal

The Underlying Litigation was terminated by a stipulation of dismissal filed pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure.[14] The stipulation of dismissal provided that, "Pursuant to F.R.C.P. 41(a)(1)(ii), the Plaintiff in this matter hereby stipulates and agrees that the action herein is hereby dismissed with prejudice and with each party bearings its (their) own costs."[15] Underlying Litigation, Docket Entry No. 116. Under Rule 41(a)(1), a plaintiff

---

[14] Rule 41(a)(1) of the Federal Rules of Civil Procedure governs voluntary dismissals by a plaintiff and its "purpose . . . is to facilitate voluntary dismissals, but to limit them to an early stage of the proceedings before issue is joined," *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F. 2d 105, 107–08 (2d. Cir. 1958); *ISC Holding AG v. Nobel Biocare Investments N.V.*, 759 F. Supp. 2d 294, 295 (S.D.N.Y. 2010).

[15] The stipulation of dismissal filed in the Underlying Litigation is annexed to the Supplemental Declaration of Dennis H. Sabourin, Esq. in Support of Special Motion to Strike Complaint for Malicious Prosecution per Cal. CCP 425.16 ("Sabourin Decl.") as Exhibit G. On a motion to strike pursuant to California's anti-SLAPP law, the Court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal Civ. Proc. Code § 425.16(b)(2).

may voluntarily withdraw an action without a court order by filing either, (1) "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment," or (2) "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(i)–(ii). Because Plaintiff (as well as the other defendants in the Underlying Litigation) appeared in the Underlying Litigation, *see* Underlying Litigation, Docket Entry Nos. 106–114, Microflo could only voluntarily withdraw its claims in the Underlying Litigation, without seeking leave of court, by filing a "stipulation of dismissal signed by all parties who have appeared." F.R.C.P. 41(a)(1)(ii). The requirement under Rule 41(a)(1)(ii) that "the parties consent to a filed stipulation is to ensure that the plaintiff will not be able to dismiss voluntarily a claim at a late stage of the action without the defendant's consent." *Baksh v. James Capt. & Citibank N.A.,* No. 99-CV-1806, 2000 WL 33177209, at *3 (E.D.N.Y. Dec. 11, 2000) (citing 8 Moore's Federal Practice § 41.34[1] (3rd ed.)). The Court finds that, contrary to Judge Wall's finding, the parties' signatures and agreement to the stipulation of dismissal are not determinative of whether the Underlying Litigation was terminated in favor of Plaintiff, as it merely reflects compliance with Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure. As the Court disagrees with Judge Wall's conclusion regarding the significance of the parties' signature on the stipulation of dismissal to the issue of favorable termination, the Court considers below whether Plaintiff has sufficiently stated that the Underlying Litigation was terminated in its favor.

### ii. Favorable termination

Under New York law, there are two ways to establish favorable termination: "(1) 'an adjudication of the merits by the tribunal in the prior action,' or (2) 'an act of withdrawal or

abandonment on the part of the party prosecuting the prior action.'" *Morgan v. Nassau County*,

No. 03-CV-5109, 2009 WL 2882823, at *8 (E.D.N.Y. 2009) (quoting *O'Brien*, 101 F.3d

at 1486); *Castro*, 850 N.Y.S.2d at 485 ("The favorable termination element must be established

by evidence that 'the court passed on the merits of the charge or claim . . . under circumstances

as to show . . . nonliability,' or evidence that the action was abandoned under circumstances

which 'fairly imply the plaintiff's innocence.'") (citation and internal quotation marks omitted).

The Court finds that Plaintiff has alleged sufficient facts to establish that the Underlying

Litigation was favorably terminated through an act of withdrawal or abandonment.[16]

---

[16] Defendants argue that while "older New York case law" indicates that a favorable termination can be shown by evidence that the underlying action was abandoned by the prosecuting party, "the progression of cases since then has marched steadily in the direction of eliminating the concept that plaintiff's abandonment of an underlying litigation constitutes a favorable termination." (Def. Supp. Mem 21.) Judge Wall also questioned in his R&R whether under current New York law, a favorable termination can be established by showing abandonment by the prosecuting party. As Judge Wall explained, the Second Circuit in *O'Brien* noted that recent "cases . . . seem to cast doubt on the viability of the . . . the abandonment prong . . . of proving favorable termination." *O'Brien*, 101 F.3d at 1486. To explain this trend, the *O'Brien* court discussed two New York Court of Appeals cases, *MacFawn v. Kresler*, 88 N.Y.2d 859 (1996) and *Hollender v. Trump Vill. Coop.*, 58 N.Y.2d 420 (1983). In both cases, the Court of Appeals dismissed plaintiffs' malicious prosecution claims stating they could not show favorable termination because there was no adjudication on the merits — seemingly ignoring the abandonment prong. *MacFawn*, 88 N.Y.2d at 860 (explaining that "[m]anifestly, the criminal action was disposed of on procedural grounds [and] [t]he court did not reach the merits"); *Hollender v. Trump Vill. Coop., Inc.*, 58 N.Y.2d at 425–426 ("[I]t is only when [the] . . . final disposition is such as to indicate innocence that this burden [of favorable termination] is met." (citations and internal quotation marks omitted)). Given the fact that in *MacFawn*, *Hollender*, and in other intermediate appellate court decisions, the courts focused on whether the merits of the case had been adjudicated in determining whether there was a favorable determination, the Second Circuit in *O'Brien* questioned whether current New York law reflects a rejection of the abandonment prong.
However, since *O'Brien*, the New York Court of Appeals has clarified the issue, stating that its "holdings in . . . *Hollender and MacFawn* stand only for the proposition that dispositions inconsistent with innocence, like the ones in those cases, cannot be viewed as favorable to the accused." *Smith-Hunter v. Hunter*, 95 N.Y.2d 191, 199 (2000). The court in *Smith-Hunter* found that a dismissal without prejudice "qualifies as a final, favorable termination" if it reflects "the formal abandonment of the proceedings by the public prosecutor." *Id.* at 198. Moreover, recent cases confirm that a favorable termination can still be established by showing that the

Plaintiff argues that Defendant Microflo's voluntary dismissal of the Underlying Litigation, as indicated by the stipulation of dismissal, constitutes a favorable termination. (Pl. Supp. Opp. 11.) While there is limited New York case law addressing whether, and to what extent, a voluntary dismissal of an underlying action can satisfy the favorable termination element of a malicious prosecution claim, the available case law supports a finding that a voluntary dismissal can be a favorable termination if (1) it was not pursuant to a settlement agreement or compromise, or (2) the circumstances under which the action was dismissed are not inconsistent with innocence.[17] *See Cantalino v. Donner*, 96 N.Y.2d 391, 395–96 (2001) (action

---

underlying action was abandoned. *See Hudson Val. Mar., Inc. v. Town of Cortlandt*, 912 N.Y.S. 2d 623, 626 (App. Div. 2010) ("The favorable termination element must be established by evidence that the 'court passed on the merits of the charge or claim . . . or evidence that the action was abandoned under circumstances 'which fairly imply the plaintiff's innocence.'" (quoting *Castro v. East End Plastic, Reconstructive and Hand Surgery, P.C.*, 850 N.Y.S.2d 483, 485 (App. Div. 2008))); *Furgang & Adwar, LLP v. Fiber-Shield Indus., Inc.*, 866 N.Y.S.2d 250, 251 (App. Div. 2008) ("To show a termination in [its] favor, the plaintiff must prove that the court passed on the merits of the charge or claim against [it] under such circumstances as to show [its] innocence or nonliability, or show that the proceedings were terminated or *abandoned* at the instance of the defendant under circumstances which fairly imply the plaintiff's innocence." (emphasis added) (alterations in original) (quoting *Pagliarulo*, 293 N.Y.S.2d 13, 15 (App. Div. 1968))). The Court follows the more recent case law from the New York state courts in concluding that a plaintiff may establish a favorable termination by showing an abandonment or withdrawal by the prosecuting party.

[17] The Court notes that the relevant jurisprudence regarding favorable termination is, at times, incongruous. First, as noted by Judge Wall, there is caselaw that an action terminated by settlement or agreement cannot, as a matter of law, be considered favorably terminated for the purposes of a malicious prosecution action. *Smith-Hunter*, 95 N.Y.2d at 196 ("A termination is not favorable to the accused . . . if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused."); *Rubin v. Lufty*, 906 N.Y.S. 2d 783, 783 (Sup. Ct. N.Y. Cnty. 2009) ("[W]here a defendant withdrew its prior civil action against the plaintiff as part of a settlement agreement, it cannot be said that the prior action was terminated in the plaintiff's favor."). However, there is also case law supporting the notion that favorable termination can be established by evidence that the claims were abandoned or withdrawn. *Castro*, 850 N.Y.S. 2d at 485 ("The favorable termination element must be established by evidence that the court passed on the merits of the charge or claim . . . under such circumstances as to show . . . nonliability, or evidence that the action was abandoned under circumstances which fairly imply the plaintiff's innocence." (citation and internal quotation marks omitted));

terminated by formal abandonment under circumstances "not inconsistent with innocence" meets

favorable termination element); *Aquilina v. O'Connor*, 399 N.Y.S.2d 919, 921 (App. Div. 1977)

(favorable termination element satisfied by action terminated not by settlement or compromise).

The Court addresses both of these principles below.

### 1. There was no settlement or compromise

The parties dispute whether the stipulation of dismissal was the product of a settlement

agreement between the parties or reflected an abandonment of the claims in the Underlying

Litigation by Defendant Microflo.   Defendants argue that the stipulation of dismissal was filed

pursuant to a settlement agreement between Defendant Microflo and Plaintiff and that in fact,

Plaintiff initiated the prospect of settlement via the stipulation of dismissal.  (Def. Supp. Mem.

16.)  Plaintiff contends that while it offered to settle the Underlying Litigation between February

27, 2009 and December 22, 2009, each of those settlement offers were ignored, and thus, lapsed,

or were outright rejected by Defendant Microflo.  (Pl. Supp. Mem. 12–13.)  Thus, Plaintiff

argues that the stipulation of dismissal was not the result of a settlement or compromise but

instead, reflects Defendant Microflo's voluntary dismissal of the Underlying Litigation.  (*Id.*

at 11–12.)

---

*Verboys v. Town of Ramapo*, 785 N.Y.S.2d 496, 497 (App. Div. 2004) (Favorable termination
can be shown by "the formal abandonment of the proceedings.").  While the Court agrees with
the well-reasoned approach by the New York courts to preclude a favorable termination finding
for cases that were terminated pursuant to a settlement or compromise of the parties, the Court
concludes that here, where there is a stipulation of withdrawal pursuant to Rule 41(a)(1) and the
parties dispute the reason for the stipulation of dismissal, the Court cannot conclude as a matter
of law that the stipulation of dismissal reflects a settlement or compromise of the parties.  Rule
41(a)(1) governs the voluntary dismissal of a claim by a *plaintiff*, and while it may require the
signatures of all the parties who have appeared in the proceeding, this requirement does not
convert a stipulation filed for the purpose of *withdrawing* a claim into a settlement agreement
between the parties to mutually discontinue litigation.

It is well-settled that an action terminated by settlement cannot sustain a malicious prosecution claim. *Smith-Hunter*, 95 N.Y.2d at 196; *Rubin*, 906 N.Y.S. 2d at 783; *see also Tray Wrap, Inc. v. Pacific Tomato Growers Ltd.*, 856 N.Y.S.2d 503, 2008 WL 222495, at *13 (Sup Ct. Bronx Cnty. Jan. 25, 2008) (citing *Aquilina*, 59 A.D.2d 454 and *Louis J. Sigl, Inc. v. Brsnahan*, 215 N.Y.S. 735 (App. Div. 1926) for the proposition that "discontinuance by plaintiff in a prior action . . . was a favorable termination when and if the evidence demonstrated that the discontinuance was not induced by the defendant in the prior action or was the result of a compromise"). Thus, if the stipulation of dismissal reflects a settlement agreement between the parties, Plaintiff cannot state a claim for malicious prosecution. The stipulation of dismissal states that "the Plaintiff in [the Underlying Litigation] hereby stipulates and agrees that the action herein is hereby dismissed with prejudice and with each party bearing its (their) own costs." (Stipulation of Dismissal, Sabourin Decl. Ex. G.) The stipulation of dismissal does not indicate that the parties reached a settlement agreement.

Under New York law, "[w]hen a termination is indecisive because it does not address the merits of the charge," and there is a dispute as to the facts surrounding the termination of the action, the question of whether the underlying action was terminated in favor of the plaintiff is a question of fact, requiring a trial on the merits of the case. *Tommy Hilfiger Lic. Inc.*, 2002 WL 737477, at *5; *see also Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) ("[W]hen the grounds for the dismissal of a criminal proceeding are unclear, New York courts consider whether the proceeding was terminated in plaintiff's favor to be a question of fact that prevents summary judgment.").

Here, the parties dispute whether there was a settlement. Since the language of the stipulation of dismissal does not indicate a settlement and the parties disagree as to whether there

was a settlement, crediting Plaintiff's factual allegations that the stipulation of dismissal was *not* the result of a settlement agreement with Defendant Microflo, as the Court is required to do, the Court cannot conclude that there was a settlement or compromise of the claims in the Underlying Litigation.

### 2. The discontinuance could be a favorable termination

Plaintiff argues that "a voluntary dismissal that is not the result of a settlement or compromise is a favorable termination." (Pl. Supp. Opp. 11.) Defendants argue that even if the stipulation of dismissal was not the result of a settlement agreement, "the procedural background [of the Underlying Litigation] proves that the dismissal still could not be deemed a 'favorable termination.'" (Def. Supp. Mem. 22.) Defendants contend that because Plaintiff's motions to dismiss the Underlying Litigation for failure to state a claim and for lack of jurisdiction were denied, except for one claim, the complaint in the Underlying Litigation "stated a viable cause of action." (*Id.*) Defendants further argue that this "record confirms" that the Underlying Litigation was terminated as a result of practical considerations including the "state of the industry" and the expenses involved in prosecuting the action, not as Plaintiff claims, because "the merits of the action would not result in a favorable termination." (*Id*. at 23.)

The Court rejects Defendants' arguments. First, the fact that Plaintiff's motions to dismiss the Underlying Litigation were denied is not determinative of whether the Underlying Litigation was terminated in favor of Plaintiffs. Determining whether a proceeding ended in a favorable termination requires the Court to evaluate the circumstances under which the underlying action was terminated. It does not necessarily require the Court to assess the viability

of the underlying claims.[18]  Second, Defendants' argument that Defendant Microflo withdrew the Underlying Litigation due to "practical considerations" and not based on a "determination that the merits of the case would not result in a favorable outcome," simply raises a factual question as to the circumstances leading to the termination of the Underlying Litigation, and does not demonstrate as a matter of law that Plaintiff fails to meet the favorable termination element.

Plaintiff's argument that a "voluntary dismissal that is not the result of a settlement or compromise is a favorable termination" is supported by New York case law.  *Aquilina*, 399 N.Y.S.2d at 921; *Mobile Training & Educ., Inc. v. Aviation Ground Schools of America ("Mobile Training")*, 28 Misc. 3d 1226(A), 958 N.Y.S.2d 61 (Sup. Ct. N.Y. Cnty. 2010).  In *Aquilina*, the Third Department rejected the argument that an action discontinued with prejudice "is not a favorable termination sufficient to support a later cause of action . . . for malicious prosecution."  399 N.Y.S.2d at 921.  Instead, the court stated that "the more realistic view, as well as the weight of authority," demonstrates that "in the absence of a compromise or inducement offered by the defendant in the primary action, the voluntary discontinuance by the plaintiff therein is tantamount to a successful termination of such action in favor of the defendant therein."  *Id.* (citations omitted).  Similarly, in *Mobile Training*, 28 Misc. 3d 1226(A), a New York County Supreme Court decision, the court noted that "[t]he question of whether . . . a voluntary dismissal qualifies as termination in favor of the plaintiff is unresolved in New York," but concluded that as long as the voluntary dismissal did not stem from a settlement or compromise between the parties, it was sufficient to state a malicious prosecution claim.  28

---

[18]  The viability of the underlying claims may be relevant to the probable cause determination which the Court discusses below in Part II.d.iii.

Misc. 3d 1226A, at *8.  Here, the stipulation of dismissal indicates that the Underlying Litigation was terminated pursuant to a voluntary dismissal and as the Court has credited Plaintiff's allegation that this stipulation does not reflect a settlement or compromise, the Court finds that this is sufficient to satisfy the favorable termination element of a malicious prosecution claim.

### 3.  Discontinuance not inconsistent with innocence

The "formal abandonment" of an action under circumstances "not inconsistent with innocence" can also satisfy the favorable termination element of a malicious prosecution claim. *Cantalino v. Donner*, 96 N.Y.2d 391, 395–96 (2001).  The question of whether an abandonment of a prosecution, "resulting in a termination 'with prejudice' . . . constitutes a termination favorable to the accused  . . . generally depends on the cause of the abandonment."  *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997).  Where the abandonment "was the result of a compromise . . . an act of mercy requested or accepted by the accused, or misconduct by the accused, it is not" a favorable termination.  *Id.*  Where, however, the action was terminated by abandonment under circumstances not "inconsistent with innocence," it is a favorable termination.  *See Mangino v. Incorporated Village of Patchogue*, 739 F. Supp. 2d 205, 228 (E.D.N.Y. 2010) ("New York law does not require a malicious prosecution plaintiff to prove her innocence, or even that the termination of the . . . proceeding was indicative of innocence. Instead, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence.").  Thus, under certain circumstances, a voluntary dismissal can be a favorable termination, depending on the cause of the dismissal.  *Chimurenga v. City of New York*, 45 F. Supp. 2d 337 (S.D.N.Y. 1999) (collecting cases).[19]

---

[19]  In *Chimurenga v. City of New York*, the court considered whether there was a favorable termination where criminal charges were "voluntarily dismissed" on a motion from the prosecutor.  45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999).  The court noted that this issue presented

Here, there is a reasonable probability that the Underlying Litigation was favorably terminated. First, the stipulation of dismissal on its face indicates that Defendant Microflo terminated the Underlying Litigation with prejudice by voluntary dismissal, without any settlement or compromise since none is mentioned, and, crediting Plaintiff's factual allegation, the Underlying Litigation was not terminated pursuant to a settlement. As the courts in *Aquilina* and *Mobile Training* found, this alone is sufficient to create a triable issue of fact as to whether there is a favorable termination. In addition, the stipulation of dismissal was filed six months after Plaintiff's last settlement offer but one month after the court *sua sponte* dismissed Defendant Microflo's civil RICO claim. These circumstances are not inconsistent with Plaintiff's innocence.

Under the circumstances of this case, Plaintiff has sufficiently alleged disputable issues of fact as to whether the Underlying Litigation was abandoned by Defendant Microflo and thus, terminated in Plaintiff's favor.[20] *See Verboys*, 785 N.Y.S.2d at 497 (favorable termination where

---

a "nice question" because "even though there are many situations in which a voluntary dismissal does not constitute a favorable termination on the merits, there are circumstances in which even a bare voluntary dismissal may, in context, indicate the innocence of the accused." *Id*. The court noted that to determine whether a voluntary dismissal is "indicative of innocence requires a careful examination of the record." *Id*. The prosecutor's motion to dismiss was "based upon [plaintiff's] background and [its] review of the facts" and the court concluded that while this basis for dismissal was "ambiguous," it raised a reasonable probability that the dismissal was sought and obtained due to a lack of evidence which would constitute favorable termination. The court concluded that based on this triable issue of fact, summary judgment was not appropriate on the issue of favorable termination. *Id*.

[20] Plaintiff also vaguely alleged in its brief before Judge Wall that "stipulations dismissing actions 'with prejudice' have the effect of a final adjudication on the merits favorable to the defendants and barring future suits upon the same causes of action." (Pl. Supp. Mem. 11 (citing *Nance v. NYPD*, 31 F. App'x 30 (2d Cir. 2002)). Defendants objected to Plaintiff's reliance on *Nance* on the basis that the Second Circuit was not considering whether the favorable termination element was satisfied in a malicious prosecution claim in that case, but rather whether a plaintiff could reopen an action that was already settled and closed pursuant to a

"although the initial criminal proceeding against the plaintiff . . . was dismissed without prejudice, the record demonstrates that the prosecution undertook a full investigation and elected not to proceed with the charges because it determined that the allegations against the plaintiff were not supported by the evidence").

Having found that there is a reasonable probability that Plaintiff can establish that the Underlying Litigation was terminated in its favor, and finding Defendants' arguments insufficient as a matter of law to defeat Plaintiff's claim of favorable termination, the Court addresses the additional elements of Plaintiff's malicious prosecution claim. To sustain its *prima facie* burden, Plaintiff must also show a lack of probable cause, malice, and special injury.[21] *Perryman v. Village of Saranac Lake*, 839 N.Y.S.2d 290, 292 (App. Div. 2007) ("To succeed on a claim for malicious prosecution, a plaintiff must show that the defendant initiated a proceeding that terminated in favor of the plaintiff, an entire lack of probable cause in the prior proceeding, malice and special injury." (citations and internal quotation marks omitted)). In addition, because the Underlying Litigation was brought solely by Defendant Microflo, Plaintiff must show that the other Defendants are liable for malicious prosecution, despite not commencing the Underlying Litigation.

### iii.  Probable cause

To sustain a malicious prosecution claim, Plaintiff must also show "an entire lack of probable cause." *Engel*, 93 N.Y.2d at 204. Probable cause is defined as "such facts and

---

stipulation of dismissal. Because the Court finds that the Underlying Litigation was abandoned pursuant to the principles addressed above, the Court declines to opine on this issue.

[21] Judge Wall did not consider whether Plaintiff had met its *prima facie* burden with respect to the remaining elements of its malicious prosecution claim. Because the parties addressed these remaining elements in their submissions to Judge Wall, the Court reviews all submissions in deciding this motion.

circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *Perryman*, 839 N.Y.S.2d at 292. "Because obviously less in the way of grounds of belief will be required to justify a reasonable man in bringing a civil rather than a criminal suit, when the underlying action is civil in nature, the want of probable cause must be patent." *Butler v. Ratner*, 691 N.Y.S.2d 871, 873 (App. Div. 1994) (citations and internal quotation marks omitted). Thus, if a defendant "had probable cause to assert *some* of their causes of action, [a] plaintiff[] [cannot] maintain a malicious prosecution claim." *Perryman*, 839 N.Y.S.2d at 292. A presumption of probable cause may exist as a result of a "judicial determination, whether final or preliminary" which previously reviewed the evidence and found it sufficient. *Rubin*, 906 N.Y.S.2d 784 ("A prior judicial recognition of potential merit of the underlying case creates a presumption that it did not lack probable cause." (citing *Fink v. Shawangunk Conservancy, Inc.*, 790 N.Y.S.2d 249 (App. Div. 2005) and *Black v. Green Harbour Homeowners' Ass'n., Inc.*, 829 N.Y.S.2d 764 (App Div. 2007))). Moreover, determining "the propriety of defendants' conduct [in bringing the Underlying Litigation], is to be decided by the facts as they appeared to be at the time the prosecution was instituted, not after the action has been determined." *Levitin v. Miller*, No. 92-CV-520, 1994 WL 376078, at *5 (S.D.N.Y. July 15, 1994) (citing *Marion Steel Co., v. Alderton Dock Yards, Ltd.*, 227 N.Y.S. 678 (App. Div. 1928)).

Plaintiff claims that Defendants' allegations in the Underlying Litigation were made "without any reasonable basis in fact or any probable cause." (Compl. ¶ 25.) According to Plaintiff, with respect to each of the causes of action alleged in the Underlying Litigation, there was no factual basis and/or Defendants knew or should have known that there was no factual support for any of their claims. (*Id.* ¶ 25a–g.) Plaintiff further argues that the underlying conflict

between the parties was "simply a breakdown in business negotiations, and nothing more" and that Malkin "conceded [during his deposition that] he had no basis for filing a lawsuit against" Plaintiff. (Pl. Supp. Opp. 15.) In support of this argument, Plaintiff submitted excerpts of the transcript of Malkin's deposition in which Malkin admits that his allegations were either based on "speculation" or that he had no actual knowledge or facts. (*Id*. at 15–18.) Defendants dispute Plaintiff's argument with a Declaration from Malkin which Defendants claim "establishes that [Malkin] and Microflo had a good faith and reasonably based belief that Microflo had been wronged by Liberty and that the Underlying [Litigation] was pursued in a reasonable attempt to recover for that wrong and for no other purpose." (Def. Supp. Reply 17.) This Declaration reiterates Defendants' allegations in the Underlying Litigation that Plaintiff's conduct in the negotiations regarding the sale of the photo filters amounted to unfair trade practices, fraud and other wrongful conduct.

The arguments of the parties setting forth their understanding and interpretation of the meaning of certain statements are disputed issues of fact that cannot be resolved by the Court. Since the parties agree that these statements are material to a determination of whether Defendant Microflo had probable cause to commence the Underlying Litigation, this issue must be decided by the trier of fact. While Plaintiff argues that Defendant Microflo had no basis in fact to pursue its claims in the Underlying Litigation and the conflict at the heart of the Underlying Litigation amounted to nothing more than a "potential business deal [which] fell through for a multitude of reasons," Defendants argue that they had a basis to assert that Plaintiff's conduct in the Underlying Litigation was "not legal" and illicit. Thus, the parties dispute several issues of fact bearing on the issue of probable cause — whether Defendants disclosed "trade secrets" in negotiations with Plaintiff, the reason why the negotiations between

the parties failed, and whether Microflo had a basis to believe that Plaintiff "reverse-engineered" its filters in order to produce its own. Construing the evidence in Plaintiff's favor, as the Court is required to do, the Court concludes there are disputed issues of fact that preclude a finding that Plaintiff has failed to allege a lack of probable cause. *Tray Wrap, Inc.*, 2008 WL 222495, at *13 (Only "[w]hen the facts regarding the existence of probable cause and the inferences to be drawn therefrom are *undisputed*, [can] the existence of probable cause . . . be decided as a matter of law." (citing *Parkin v. Cornell Univ., Inc.*, 78 N.Y.2d 523 (1991) and *Lundgren v. Margini*, 817 N.Y.S.2d 349 (App. Div. 2006))).[22]

### iv. Malice

Plaintiff must also show that Microflo acted with malice in commencing the Underlying Litigation. Plaintiff argues that "[i]t is undisputed that Defendants acted with conscious falsity when, after little to no investigation, they filed suit based on speculation." (Pl. Supp. Opp. 18.) Plaintiff further alleges that "Malkin's [deposition] testimony supports an inference under . . .

---

[22] Defendants have noted that most of the claims in the Underlying Litigation withstood two motions to dismiss. A "judicial determination in the prior action such as an adverse judgment to plaintiff, a conviction of the same, or a recognition of the potential merit of defendant's prior action is either prima facie evidence of probable cause to initiate the prior proceeding or conclusive evidence of the same." *Tray Wrap, Inc. v. Pacific Tomato Growers Ltd.*, 856 N.Y.S.2d 503, 2008 WL 222495, at *13 (Sup Ct. Bronx Cnty. Jan. 25, 2008); *Hornstein v. Wolf*, 491 N.Y.S. 2d 183, 186 (App. Div. 1985); *see also I.G. Second Generation Partners, L.P. v. Duane Reade*, 793 N.Y.S.2d 379, 380–81 (App. Div. 2005) ("Where, as here, a judgment has been entered against the malicious prosecution plaintiff in the prior action of which it complains, the circumstance is at least prima facie evidence that the prior action was based on probable cause, and this presumption is not overcome by a subsequent reversal"). While the Underlying Litigation withstood a motion to dismiss by Plaintiff, that motion sought to dismiss solely on jurisdictional and/or venue grounds. The Walgreen Defendants moved to dismiss the Underlying Litigation for failure to state a claim, which motion was granted in part, and denied in part by Judge Wexler. However, Judge Wexler did not issue a written opinion and there is no evidence before the Court that he considered the sufficiency of the substantive allegations against Plaintiff in addressing the motion to dismiss by the Walgreen Defendants.

New York law, because there are no facts supporting probable cause to pursue Liberty in the Underlying Litigation." (*Id.*)

Malice "may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." *Daly v. Ragona*, No. 11-CV-3836, 2013 WL 3428185, at *7 (E.D.N.Y. July 9, 2013) (citing *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)). "A lack of probable cause generally creates an inference of malice." *Id.* Moreover, once there is an issue of fact as to probable cause, "the element of malice also becomes an issue of material fact as well." *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003); *Zahrey v. City of New York*, No. 98-CV-4546, 2009 WL 54495, at *20 (S.D.N.Y. Jan. 7, 2009). Because the Court finds that there is an issue of fact on the issue of probable cause, there is also an issue of fact as to the issue of malice.

### v. Special injury

Plaintiff argues that it sustained the following "special damages" as a result of the Underlying Litigation: significant legal fees which affected Plaintiff's ability to purchase a competitor and to borrow capital, strained relationships with distributors and customers, loss or projected sales revenues, and "decreased availability of funds and higher borrowing costs." (Pl. Supp. Opp. 18; Am. Compl. ¶ 28.) Plaintiff also claims that it disclosed the Underlying Litigation during discussions with potential buyers and while it held discussions with one specific company, those discussions "ceased in large part due to" the Underlying Litigation. (Am. Compl. ¶ 28.) Defendants assert that even if proven, Plaintiff's special injury allegations are insufficient, because the allegations either lack proof or do not satisfy the "special injury" standard under New York law of being "more cumbersome than the . . . demands of defending a lawsuit." (Def. Supp. Mot. 12–16.)

A special injury is a "highly substantial and identifiable interference with person, property or business and must entail some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit." *Dudick v. Gulyas*, 716 N.Y.S.2d 407, 410 (App. Div. 2000); *Engel*, 93 N.Y.2d at 205 ("[W]hat is special about special injury is that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit."). Courts have recognized special injuries in the form of arrests, loss of business, suspension without pay, and provisional remedies such as an attachment of bank accounts or an injunction. *Minasian v. Lubow*, 856 N.Y.S.2d 255, 257 (App. Div. 2008) (arrest); *Dudick*, 716 N.Y.S.2d at 410 (loss of business); *Honzawa v. Honzawa*, 701 N.Y.S.2d 411, 413 (App. Div. 2000) (attachment); *Groat v. Town Bd. of Town of Glenville*, 426 N.Y.S.2d 339, 341(App. Div. 1980) (suspension without pay). In order for a claim of lost business to meet the special injury standard, it must be specific and verifiable. *See Engel*, 182 F.3d at 132 (noting that "[e]ven though we can foresee specific, verifiable loss of business providing the necessary grievance [for special injury], the loss of one client along with vague allegations of reputational loss, given [the plaintiff's] established practice, are not sufficient"); *Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, No. 11-CV-3327, 2013 WL 417406, at *14 (S.D.N.Y. Feb. 4, 2013) ("New York law recognizes loss of business as a special injury in a case for malicious prosecution, as long as [the] [p]laintiff sufficiently identifies the specific business lost as a result of the civil proceeding.").

## 1. Legal fees

Plaintiff claims that the significant cost of legal fees in defending the Underlying Litigation, "brought [Plaintiff's] negotiations to purchase a competitor to a halt due to [Liberty's]

inability to borrow capital as a result of a covenant breach during the first quarter of 2009." (Pl. Supp. Opp. 18.) This claim is insufficient to allege a special injury. "[A]ttorneys' fees and cost associated with defending a lawsuit do not rise to the level necessary to show special damages." *McCaul v. Ardsley Union Free School Dist.*, 514 F. App'x 1, 6 (2d Cir. 2013) (claim that plaintiff "spent thousands of dollars to retain an attorney and suffered distress and anxiety" is not special injury (citing *Engel*, 93 N.Y.2d at 205)); *Sankin v. Abeshouse*, 545 F. Supp. 2d 324, 328 (S.D.N.Y. 2008) ("[A]ttorneys' fees and cost associated with defending a lawsuit do not rise to the level necessary to show special damages." (citing *Engel*, 93 N.Y.2d at 205)); *Engel*, 93 N.Y.2d at 205 (noting that special injury must involve harm "more cumbersome" than "financial demands of defending a lawsuit"); *Mobile Training*, 28 Misc. 3d 1226A, 958 N.Y.S.2d 61 ("[T]he expense of defending against the [underlying] lawsuit . . . is decidedly not special."); *Zhang v. Goff*, 18 Misc. 3d 1134(A), at *3 (Sup. Ct. Queens Cnty. 2008) ("[L]egal fees do not meet 'the special injury requirement.'" (citing *Engel*, 93 N.Y.2d at 201)). Thus, to the extent that Plaintiff is alleging that its inability to borrow capital and its negotiations to purchase a competitor were halted by the "significant cost of legal fees," Plaintiff has not pled a harm "more cumbersome" than the "demands of defending a lawsuit." *Engel* 93 N.Y.2d at 205. The Court considers Plaintiff's allegation that it lost its ability to borrow capital and to purchase a competitor separately.

### 2. Inability to borrow capital and negotiations to purchase competitor

Plaintiff's claim that negotiations to purchase a competitor ceased due to its "inability to borrow capital as a result of a covenant breach during the first quarter of 2009," (Pl. Supp. Opp. 18), also fails to satisfy the special injury element. Plaintiff has not specified how the Underlying Litigation caused the unspecified covenant breach which then caused Plaintiff to be

unable to borrow capital. To meet the special injury requirement, the injury must have "resulted because of the [Underlying Litigation]." *Goodstein v. Jones*, No. 114335/2006, 2008 N.Y. Misc. LEXIS 10574, at *2–3, 2008 N.Y. Slip Op 33018U (Sup. Ct. N.Y. Cnty. Nov. 10, 2008). Accordingly, this allegation does not meet the special injury standard.

### 3. Strained relationships with distributors and customers

Plaintiff claims that "Microflo's pursuit of baseless claims caused strained relationships the [sic] Liberty's distributors and customers and caused Liberty to receive requests for reimbursements of legal fees for costs associated with subpoenaed information in the [Underlying Litigation]." (Am. Compl. ¶ 28.) First, the "requests for reimbursements" constitute costs related to the defense of the Underlying Litigation, and as explained above, cannot meet the special injury standard. Moreover, Plaintiff's vague claim of "strained relationships," as a result of the Underlying Litigation is also insufficient to state a special injury. The limited case law that addresses whether a claim of "strained relationships" can satisfy the special injury requirement suggests that such a claim is insufficient. *See Engel*, 93 N.Y.2d at 207 (finding that "the loss of one client along with vague allegations of reputational loss . . . are not sufficient" to meet special injury requirement); *Campion Funeral Home, Inc. v. State of New York*, 569 N.Y.S.2d 518, 521 (App. Div. 1991) ("Injury to reputation . . . fails to satisfy [special injury] requirement."); *Rubin*, 906 N.Y.S.2d 783 (Sup. Ct. N.Y. Cnty. 2009) ("conclusory claim of reputational harm" insufficient to state special injury); *Loftus v. Arthur*, 847 N.Y.S.2d 902 (Sup. Ct. Madison Cnty. 2007) (noting that "incidental damage to [a] plaintiff's reputation is insufficient" to state a special injury). Thus, Plaintiff's allegation of "strained relationships" as a result of the Underlying Litigation also fails to meet the special injury standard.

### 4. Loss of projected sales revenue

Plaintiff claims that it sustained "substantial loss of projected sales revenues" in the amount of $745,097 "as a direct result of Microflo's conduct." (Pl. Supp. Opp. 19.) Plaintiff specifies that its net projected lost sales was $486,662 to Walmart, $53,561 to Costco, $26,781 to Independent photo labs, and $382,368 to Noritsu Labs at Walgreens. (*Id*.) Plaintiff elaborates that with regard to projected lost sales to Noritsu Labs, it was "unable to provide reusable filters which could be manufactured to the specifications necessary for use . . . upon disclosure of the [Underlying Litigation]." (*Id*.)

In order to meet the special injury element, a lost business claim must be specific and verifiable. While Plaintiff provides specific figures for its alleged losses, with respect to its lost sales from Walmart, Costco, and Independent photo labs, Plaintiff has not provided any facts explaining how these losses were caused by the Underlying Litigation, merely alleging that these losses were "a direct result of [Defendant] Microflo's conduct." Plaintiff must allege "facts that would establish that" the Underlying Litigation caused its claimed special injury. *Kaye v. Trump*, 873 N.Y.S.2d 5, 6 (App. Div. 2009) (rejecting plaintiff's claim of special injury where plaintiff alleged that "she was forced by defendants' 'acts' to sell her condominium unit and move from the building [but] assert[ed] no facts that would establish that the [underlying litigation] caused her to move"); *see also Kaslof v. Global Health Alternatives, Inc.*, No. 98-CV-7477, 2000 U.S. Dist. LEXIS. 21053, at *68 (E.D.N.Y. June 29, 2000) (noting that "plaintiff failed to allege any special injury that they have incurred *as a result of* the [underlying litigation]"). With respect to the losses from Walmart, Costco and Independent photo labs, Plaintiff has not provided any specific allegations as to how these losses were caused by the Underlying Litigation; therefore, these losses do not constitute special injury.

With respect to its loss from sales to Nortisu Labs, Plaintiff states that it was "unable to provide reusable filters which could be manufactured to the specifications necessary for use in Noritsu photo developing machines upon disclosure of the [Underlying Litigation]." (Pl. Supp. Opp. 19.) Although lacking in details, because Plaintiff alleges what the lost business is, and that the lost business is as a result of the Underlying Litigation, it arguably satisfies the special injury standard under New York law. *See In re Eerie World Entm't., LLC*, No. 00-CV-13708, 2006 WL 1288578, at *8 (S.D.N.Y. Bankr. Apr. 28, 2006) (plaintiff alleged special injury when plaintiff pled loss of business from a specific entity that was the result of initiation and prosecution of the prior action); *Strumpf v. Asdourian*, No. 110141/06, 2006 N.Y. Misc. LEXIS 3976, at *10 (Sup. Ct. N.Y. Cnty. Dec. 12, 2006) (finding that plaintiff sufficiently alleged special injury by claiming "the loss of certain clients whom she was compelled to advise regarding the [prior] [law]suit").[23]

In sum, crediting Plaintiff's factual allegations, Plaintiff has shown a reasonable probability of succeeding on its malicious prosecution claim against Defendant Microflo and Defendants have not defeated Plaintiff's claim as a matter of law.

---

[23] Plaintiff also argues that its efforts to sell the company were "impaired" because of the Underlying Litigation. (Pl. Supp. Opp. 20.) Plaintiff alleges that it was required to disclose the Underlying Litigation, "as well as the legal fees incurred and anticipated" to potential buyers and this "negatively affected" its sale efforts. (*Id.*) However, Plaintiff does not specify in its opposition papers the nature of the negative impact on its sale efforts caused by the Underlying Litigation. The Complaint provides a more specific allegation stating that, "one specific company held discussions with [Plaintiff] about a potential sale and discussions ceased in large part due to [Defendant] Microflo's lawsuit." (Am. Compl. ¶ 28,) In both of these allegations, Plaintiff does not appear to be alleging that it lost a sale *because* of the Underlying Litigation but that its sale efforts were negatively impacted somehow by the Underlying Litigation. Without specific allegations demonstrating that this negative impact constituted "a highly substantial and identifiable interference with [Plaintiff's] person, property or business . . . more cumbersome than the physical, psychological or financial demands of defending a lawsuit," these allegations are insufficient to state a special injury.

### e. Veil piercing

To state a claim for malicious prosecution, Plaintiff must show that Defendants commenced the Underlying Litigation. *Sankin v. Abeshouse*, 545 F. Supp. 2d 324, 327 (S.D.N.Y. 2008) (plaintiff failed to state malicious prosecution claim where plaintiff did not show that underlying litigation "was initiated by either [d]efendant"); *Loftus v. Arthur*, 847 N.Y.S.2d 902 (Sup Ct. 2007) ("It has been held that the key to the first element of [a malicious prosecution claim] is the *defendant's* commencement the underlying proceeding."). It is undisputed that the Underlying Litigation against Plaintiff was commenced by Defendant Microflo only. Thus, Plaintiff must allege a basis for liability against Defendants Ecotech, Malkin, and the unknown Defendants, Does 1–20. Plaintiff alleges that Malkin and Ecotech are "alter egos" of Defendant Microflo, and the Court should therefore "pierce the corporate veil" and hold them liable for malicious prosecution of the Underlying Litigation.[24] (Pl. Supp Opp. 21–24.)

"Alter ego liability exists when a parent or owner uses the corporate form to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own." *OOO "Garant-S" v. Empire United Lines Co., Inc.*, 557 F. App'x 40, 45 (2d Cir. 2014) (quoting *Kiobel v. Royal Dutch Petroleum Co.*, 621 F. 3d 111, 195 (2d Cir. 2010)). A party seeking to pierce the corporate veil under New York law

---

[24] Though not addressed in their briefs before the Court, in its Amended Complaint, Plaintiff appears to allege liability against Ecotech as an agent of Defendant Microflo in its Amended Complaint . (Am. Compl. ¶ 4 ("Ecotech has maintained through Microflo a maliciously prosecuted lawsuit against Liberty, for its own benefit. Microflo uses Ecotech as its agent for causing the manufacture of Microflo's product in Mexico, and uses Ecotech and others as agents to direct the sale of its products to the customers of Microflo. Ecotech, through Microflo, prosecuted the now dismissed case against Liberty."); *see also id.* ¶ 5 (Malkin . . . . utilize[s] [Microflo and Ecotech] as his individual agents.).

and hold another entity or individual liable on a claim against a corporation must show: (1) the alleged alter ego "exercised complete domination over the corporation with respect to the transaction at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil." *MAG Portfolio Consultant, GMBH v. Merlin Biomet Grp., LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). Courts consider ten equitable factors in determining whether the first requirement — domination — has been met. They are:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 386 F. Supp. 2d 461, 464 65 (S.D.N.Y. 2005) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick*, 933 F.2d 131, 139 (2d. Cir. 1991)). If the domination requirement is met, the plaintiff must then fulfill the second requirement by showing (1) "the existence of a wrongful or unjust act toward that party," and (2) that "the act caused the party's harm." *JSC Foreign Econ. Ass'n Technostroyexport*, 386 F. Supp. 2d at 465. "The party seeking to pierce the corporate veil must establish that the owners of the corporation, through their dominance of the corporation, 'abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such

that a court in equity will intervene.'" *Id.* (quoting *Morris v. N.Y. Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141 (1993)); *see also Mag Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 64 (2d Cir. 2001) ("Without a finding that the domination occurred for the purpose of committing a wrong, the second element of a veil-piercing analysis has not been met.").  The Court considers each Defendant below.

### i. Ecotech

Defendants contend that Plaintiff cannot establish a reasonable probability of success against Ecotech, because there is "no law" under which a "subsidiary or dominated party" has been held liable for the acts of its parent, controlling shareholder, or dominating party based on an alter ego theory.  (Def. Supp. Reply 18; Def. Supp 23.)  Defendants are incorrect.  Although uncommon, New York law recognizes "reverse veil-piercing," where, as here, a party seeks to hold a subsidiary liable for the actions of its parent or shareholders.  *Ross Univ. School of Medicine, Ltd. v. Brooklyn-Queens Health Care, Inc.*, No. 09-CV-1410, 2013 WL 1334271, at *13 n.3 (E.D.N.Y. Mar. 28, 2013) ("[T]he doctrine of 'reverse' veil-piercing is applicable where . . . a party attempts to hold a subsidiary corporation . . . liable for the actions of its parent."); *Miramax Film Corp. v. Abraham*, No. 01-CV-5202, 2003 WL 22832384, at *7 (S.D.N.Y. 2003) ("Although reverse veil piercing is rare, it may be appropriate in cases where the alter ego is being used as a 'screen' for the dominating entity."  (citing *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929))); *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 323 (Bankr. S.D.N.Y. 1999) (noting that "reverse veil piercing may be rare . . . but not impossible"); *see also Am Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d. Cir. 1997) ("New York law recognizes 'reverse'

piercing . . . seek[ing] to hold a corporation accountable for actions of its shareholders." (citing *State v. Easton*, 647 N.Y.S.2d 904, 908–09 (Sup. Ct. 1995)).

"As with conventional veil-piercing claims, in a reverse veil-piercing claim, the plaintiff must allege (1) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *JSC Foreign Economic Ass'n Technostroyexport*, 295 F. Supp. 2d. at 379. Courts consider the same ten equitable factors outlined above in determining whether there is sufficient evidence of domination in a reverse veil-piercing claim, as in a typical veil-piercing claim. *Monteleone v. Leverage Grp.*, No. 08-CV-1986, 2009 WL 249801, at *3 (E.D.N.Y. Jan. 28, 2009).

In its Amended Complaint, Plaintiff makes several allegations in support of its alter ego theory, including that:

> a) Ecotech functions at the absolute direction of Microflo in conducting their business of causing to be manufactured filters for photo developing machines[,] b) All of the business of Microflo and Ecotech is directed by Malkin from his office in New York[,] c) Prices for goods by Ecotech and Microflo are all determined by Malkin from his office in New York[,] d) The formalities of annual and periodic reports and statements required of Microflo, and Ecotech are conducted on an after the fact basis by Malkin, if at all[,] e) The existence of Ecotech is maintained by Malkin and Microflo only to place profits . . . in offshore tax havens, such existence and activities being without economic substance but constituting the business of Microflo[,] f) Microflo functions as the alter-ego of Malkin in that Microflo is used as a corporate pocketbook for Malkin and his individual interest[,] and g) The capitalization of Microflo and Ecotech is established at the sole direction and whim of Malkin.

(Am. Compl. ¶ 6a–g.) Plaintiff claims that Ecotech does not observe corporate formalities, as evidenced by Malkin's "conce[ssion]" that, when assigning his 100% interest in Ecotech to Microflo, he did not require "any additional stock in Microflo Ltd. be issued to [him] in

exchange." (Pl. Supp. Opp. 22–23.) Plaintiff also alleges that the entities were inadequately capitalized and that Malkin "did not (and could not) make timely payments [owed from Ecotech to Microflo] because Malkin failed to issue instructions among his various entities to generate invoices." (*Id*. at 23.) Plaintiff also contends that Malkin admitted in documents exchanged in litigation that he used corporate funds for personal expenses.[25] (*Id*. at 23.)

These allegations — alleging a lack of corporate formalities, undercapitalization, failure to issue periodic reports, and the use of corporate funds for personal use — are sufficient, if accepted as true, to establish domination. *United States v. Hued*, No. 87-CV-7740, 1992 WL 346877, at *3 (S.D.N.Y. Nov. 10, 1992) (finding a triable issue of fact on alter ego claim where plaintiff alleged that corporate entity was undercapitalized and alleged alter ego could not recall whether corporation had ever issued an annual report); *Horizon Inc. v. Wolkowicki*, 865 N.Y.S.2d 195 (App. Div. 2008) (finding triable issue of fact precluding summary judgment where alleged alter ego "ignored the corporate form by transferring monies in and out . . . without any documentation or formalities); *Forum Ins. Co. v. Texarkoma Transp. Co.*, 645 N.Y.S.2d 786, 786 (App. Div. 1996) ("Under New York law, the corporate veil can be pierced where there has been, *inter alia*, a failure to adhere to corporate formalities, inadequate capitalization, use of corporate funds for personal purpose, [and] overlap in ownership and directorship . . . .").

Having shown evidence of domination, Plaintiff must also show that Microflo's "domination was used to commit a fraud or wrong against [P]laintiff which resulted in [its]

---

[25] Plaintiff submitted an email authored by Malkin dated July 23, 2005, stating in relevant part, "As you may already know, I screw up the cash flow for all of the companies because I hold the funds in a New York bank where I get an unusual rate of interest; enough to by [sic] me a car and much more and then everything gets paid in December." (Email dated July 23, 2005, annexed to the Declaration Harold J. Ducote In Opposition to Def. Mot. to Strike as Exh. O, Tab 10.)

injury." *JSC Foreign Econ. Ass'n Technostroyexport*, 295 F. Supp. 2d at 378. This prong does not require evidence of fraud, rather "a veil-piercing claimant can prevail without proving fraud if the claimant can identify some non-fraudulent 'wrong' attributable to the defendant's complete domination of a subsidiary entity." *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Sup. 117, 122 (S.D.N.Y. 1996). Plaintiff alleges that "Ecotech, through Microflo, prosecuted" the Underlying Litigation; Plaintiff appears to allege malicious prosecution as the "dishonest" or "wrong" act by Ecotech. (Am. Compl. ¶ 4.) This satisfies the second requirement for veil-piercing. *Cardell Fin. Corp. v. Suchodolski Assocs.*, No. 09-CV-6148, 2012 U.S. DIST. LEXIS 188295, at *90 (S.D.N.Y. July 17, 2012) ("[T]he use of the corporation to file a lawsuit that is alleged to be having a detrimental impact . . . could be viewed as a wrongful act."). Accordingly, Plaintiff has sufficiently alleged an alter ego relationship between Microflo and Ecotech.

### ii. Malkin

Plaintiff argues that Malkin should be held liable for Microflo's malicious prosecution of the Underlying Litigation, based on similar allegations as those against Ecotech. Plaintiff contends that Malkin "is the sole shareholder, director, officer, and full-time employee of Microflo," that Microflo is undercapitalized and that Malkin used Microflo's corporate funds for his personal use. (Pl. Supp. 22–23.) Plaintiff also alleges that all of Microflo's business is directed by Malkin, and that Microflo is used as the "corporate pocket book for Malkin and his individual interests." (Am. Compl. ¶¶ 6b, 6f.) Defendants argue that Plaintiff's allegations are insufficient to show an alter ego relationship between Malkin and Microflo, relying on corporate records to demonstrate that Microflo "acted in its own name from 2003 through 2008." (Def. Supp. Reply 19.) Defendants also assert that Plaintiff has failed to submit any proof demonstrating inadequate capitalization, use of corporate funds for personal purposes, and fails

to demonstrate a "factual basis" for its alter ego theory or the presence of any other factor typically used by courts in assessing "complete domination" by alleged alter egos. (*Id*. at 19–23.)

Plaintiff is not required to *prove* its claims in order to defeat Defendants' motion to strike. *Burrill*, 158 Cal. Rptr. 3d at 347–48 ("[T]he anti-SLAPP statute does not require the plaintiff to prove the specified claim to the trial court." (citation and internal quotation marks omitted)). Rather, the Court is required to credit Plaintiff's factual allegations. (*Id*. (Courts should "accept as true all evidence favorable to the plaintiff.")). Crediting Plaintiff's allegations, there appears to be at least a triable issue of fact as to the issue of domination of Microflo by Malkin, particularly as Plaintiff alleges a use of corporate funds for personal use. The improper use of funds is sufficient to support an alter ego claim. *See Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*, 526 F. Supp. 2d 451, 454–455 (S.D.N.Y. 2007) (citing *Wajilam Exps. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 283 (S.D.N.Y. 2006) and *Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F. Supp. 103, 105 (E.D.N.Y. 2003)).

Plaintiff also satisfies the second veil-piercing prong which considers whether the alter ego used its domination to commit fraud or another wrong — that is, "to perpetrate the violation of a . . . positive legal duty or a dishonest or unjust act in contravention of plaintiff's legal rights." *D. Klein & Son, Inc. v. Good Decision*, *Inc*., 147 F. App'x 195, 198 (2d Cir. 2005). Plaintiff alleges that Malkin "acting through Microflo," caused the Underlying Litigation against Liberty "for his own benefit." (Am. Compl. ¶ 16.) As discussed above, the malicious prosecution of the Underlying Litigation meets this standard. Thus, Plaintiff has alleged sufficient facts, which if accepted as true as the Court is required to do, establish that Malkin was the alter ego of Microflo.

### iii. John/Jane Does 1–20

Plaintiff has not addressed the liability of the unknown Defendants ("Doe Defendants") in any of its briefing submitted in connection with the instant motion.  In the Amended Complaint, Plaintiff states that it believes that "Does 1 through 20 were responsible in some manner for the acts and transactions hereby alleged and are liable to Plaintiff."  (Am. Compl. ¶ 8.)  Plaintiff does not proffer any alter ego allegations against the Doe Defendants, though Plaintiff alleges vaguely that "each of the Defendants was the agent, employee, licensee, invitee, assignee and/or subordinate of the remaining Defendants."  (*Id.* ¶ 9.)  Because Plaintiff has not sufficiently alleged a basis for liability against the Doe Defendants, the Court grants Defendants' anti-SLAPP motion as to the Doe Defendants.

### f. Sanctions

In view of the Court's decision denying Defendants' motion to strike, the Court denies Defendants' motion for sanctions.

### III. Conclusion

For the reasons set forth above, the Court adopts Judge Wall's R&R as to the determination that the issue of which substantive law applies to Plaintiff's malicious prosecution claim is the law of the case, but declines to adopt the portion of Judge Wall's R&R which found that Plaintiff does not have a reasonable probability of prevailing on its malicious prosecution claim. The Court finds that Plaintiff has a reasonable probability of prevailing on its malicious prosecution claim as to the named Defendants. Therefore, California's anti-SLAPP statute does not preclude Plaintiff's claim against the named Defendants. Accordingly, the Court denies Defendants' motion to strike the Complaint as to the named Defendants. The Court grants Defendants' motion to strike the Complaint as to Does 1 through 20. The Court also denies Defendants' motion for sanctions.

SO ORDERED:

_____ s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: Brooklyn, New York
         September 25, 2014